CHRISTINE HELLER ET AL. *v.* D. W. FISH REALTY COMPANY ET AL.
(AC 25624)
(AC 26102)

Lavery, C. J., and Schaller and West, Js.*

---

[6] In light of our remand, it is unnecessary to reach the petitioner's fifth issue on appeal.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued October 24, 2005—officially released February 14, 2006

*Daniel Jonah Krisch,* with whom was *Michael S. Taylor* and, on the brief, *Brendon P. Levesque,* for the appellants-appellees (defendants).

*Derek V. Oatis,* for the appellees-appellants (plaintiffs).

*Opinion*

WEST, J. The defendants, D. W. Fish Realty Company (D. W. Fish) and JoAnn Marozzi, appeal from the judg-

ment of the trial court rendered following a jury verdict in favor of the plaintiffs, Christine Heller and Richard Heller. The plaintiffs also appeal, challenging the court's denial of their motion for attorney's fees. In the first appeal, AC 25624, the defendants claim that the court improperly denied their motion to set aside the verdict. In the second appeal, AC 26102, the plaintiffs claim that the court improperly denied their motion for attorney's fees. We affirm the judgment of the trial court as to the motion to set aside the verdict and reverse the judgment as to the motion for attorney's fees.

The jury reasonably could have found the following facts. The plaintiffs sought to purchase their first home and contacted D. W. Fish, a real estate agency. Marozzi, an agent with D. W. Fish, showed the plaintiffs a home at 18 French Road in Bolton. During their visit to the home, the plaintiffs and Marozzi saw a well in the backyard. Marozzi told the plaintiffs that she would ask the listing agent about the well. The plaintiffs and Marozzi then returned to D. W. Fish's office, where the plaintiffs signed a contract to purchase the home. The "well inspection contingency" rider to the contract provided in relevant part that the "[c]ontract is contingent upon a satisfactory test of the well system to be performed by a competent well inspector at [b]uyer's expense." Although there was no written buyer agency contract between the plaintiffs and the defendants, Marozzi told the plaintiffs that she would arrange all necessary inspections of the home, including a well inspection. She later assured the plaintiffs that the well functioned properly. The plaintiffs then closed the sale and moved into the home.

Approximately seven weeks later, the plaintiffs noticed a problem with their water quality and discovered that rodents had entered the well and died there. The plaintiffs replaced the well, known as a dug well, with a drilled well. They later learned that the inspector

whom Marozzi had hired performed a water test, but was not qualified to perform a well inspection, which would have revealed holes through which rodents could enter the well. The plaintiffs then commenced this action, alleging that the defendants had breached their contract with the plaintiffs, acted negligently and violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.

After a trial, the jury returned a verdict in favor of the plaintiffs on all counts and awarded them $18,500 in economic damages and $25,000 in noneconomic damages. The court denied the defendants' motion to set aside the verdict and rendered judgment in accordance with the verdict. The court subsequently denied the plaintiffs' motion for attorney's fees. These appeals followed.

## I

In AC 25624, the defendants claim that the court should have granted their motion to set aside the verdict. We disagree.

"[T]he proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict . . . [is] the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . We do not . . . determine whether a conclusion different from the one reached could have been reached. . . . A verdict must stand if it is one that a jury reasonably could have returned and the trial court has accepted." (Internal quotation marks omitted.) *Cousins* v. *Nelson*, 87 Conn. App. 611, 624–25, 866 A.2d 620 (2005).

In support of their claim that the court should have granted their motion to set aside the verdict, the defendants argue that they (1) had no contractual obligation to inspect the well, (2) were not negligent because they had no duty to inspect the well and that their failure to inspect the well did not cause the plaintiffs' damages, and (3) did not violate CUTPA. We disagree with all of those arguments.

### A

The defendants first argue that they did not have a contractual obligation to inspect the well. That argument merits little discussion. "The existence of a contract is a question of fact to be determined by the trier on the basis of all the evidence." (Internal quotation marks omitted.) *Hudson United Bank* v. *Cinnamon Ridge Corp.*, 81 Conn. App. 557, 572, 845 A.2d 417 (2004). The evidence indicated that Marozzi promised to arrange a well inspection and failed to do so. Although no written buyer agency contract existed, the jury reasonably could have concluded, on the basis of Marozzi's oral promise, that the defendants had a contractual obligation to inspect the well and breached that obligation.

### B

The defendants next argue that they were not negligent in failing to inspect the well. We begin by addressing whether the defendants had a duty to inspect the well. "The test for determining legal duty is a two-pronged analysis that includes: (1) a determination of foreseeability; and (2) public policy analysis." *Monk* v. *Temple George Associates, LLC*, 273 Conn. 108, 114, 869 A.2d 179 (2005). As to the first prong, "[d]uty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. . . . The ultimate test of the existence of the duty to use care is found in the foreseeability

that harm may result if it is not exercised. . . . [In other words], would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" (Internal quotation marks omitted.) Id., 115. As to the second prong, "[i]n considering whether public policy suggests the imposition of a duty, we . . . consider the following four factors: (1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions." (Internal quotation marks omitted.) Id., 118.

We reject the defendants' argument that they had no duty to inspect the well. Not only was Marozzi aware of the presence of the well, she told the plaintiffs that she would ask the listing agent about it and arrange an inspection of it pursuant to the contract of sale. Marozzi later told the plaintiffs that the well functioned properly, even though the inspector she had hired was not qualified to inspect wells. In the absence of a written buyer agency contract, the jury reasonably could have determined that Marozzi orally had promised to order a proper well inspection. Those circumstances lead us to determine that it was foreseeable to Marozzi that harm could result from a failure to inspect the well properly. The defendants argue that Marozzi did not know that a well inspection is different from the water test that was performed, but her lack of knowledge regarding the specific nature of a well inspection does not affect the foreseeability of the harm.

The factors relating to public policy also support the imposition of a duty on the defendants. In particular, the parties expected that Marozzi would arrange a well inspection because she promised the plaintiffs that she would do so. Furthermore, because it is desirable to

promote home ownership, public policy favors requiring real estate agents to fulfill the promises they make to buyers. We do not believe that imposing a duty on the defendants to inspect the well in the present case will increase litigation because the facts clearly indicate that Marozzi told the plaintiffs that she would take the responsibility of arranging a well inspection. In view of the distinctive facts of the present case, we find it unnecessary to consider the decisions of other jurisdictions. In sum, our determination of foreseeability and public policy analysis lead us to reject the defendants' argument that they had no duty to inspect the well.

We next address whether the defendants' failure to inspect the well caused the plaintiffs' damages. To establish causation, the plaintiffs were required to demonstrate that the defendants' conduct was a cause in fact and the proximate cause of the plaintiffs' damages. "The test for cause in fact is [w]ould the injury have occurred were it not for [the defendant's] negligent . . . conduct . . . ? Proximate cause is defined as [a]n actual cause that is a substantial factor in the resulting harm . . . . The substantial factor test, in truth, reflects the inquiry fundamental to all proximate cause questions; that is, whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence." (Internal quotation marks omitted.) *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 571, 864 A.2d 1 (2005).

We conclude that the plaintiffs produced sufficient evidence for the jury reasonably to have concluded that the defendants' failure to inspect the well caused the plaintiffs' damages. The test for cause in fact is satisfied because the plaintiffs' damages would not have occurred if Marozzi had arranged a well inspection by a competent professional. The defendants' failure to inspect the well was the proximate cause of the plaintiffs' damages because the lack of a proper inspection

was a substantial factor in the resulting harm. The harm that occurred, namely, the rodent infestation of the well, was of the same general nature as the foreseeable risk that Marozzi took in failing to inspect the well. Marozzi knew or should have known that a failure to inspect the well properly could result in a failure to discover defects in the well, and those defects in fact allowed rodents to enter the well. The jury, therefore, reasonably could have concluded that the defendants caused the plaintiffs' damages by failing to inspect the well.

C

The defendants' last argument is that they could not have violated CUTPA because they did not contract with the plaintiffs to inspect the well and were not negligent. Having rejected the defendants' arguments regarding their contractual obligation and negligence, we also reject their argument that they did not violate CUTPA.

Accordingly, we conclude that the court did not abuse its discretion in denying the defendants' motion to set aside the verdict in favor of the plaintiffs.

II

In AC 26102, the plaintiffs claim that the court improperly denied their motion for attorney's fees. We agree.

General Statutes § 42-110g (d) provides in relevant part that "[i]n any action brought by a person [pursuant to CUTPA], the court may award . . . costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery. . . ." As we have stated previously, "[a]n award of attorney's fees is not a matter of right. Whether any award is to be made and the amount thereof lie within the discretion of the trial court, which is in the

best position to evaluate the particular circumstances of a case." (Internal quotation marks omitted.) *LaMontagne* v. *Musano, Inc.*, 61 Conn. App. 60, 63–64, 762 A.2d 508 (2000).

The court ordered the plaintiffs to submit "evidence as to the portion of the fees requested specifically related to the CUTPA [claim] . . . ." The plaintiffs, however, could not distinguish the amount of attorney's fees related to their CUTPA claim from the amounts related to their breach of contract and negligence claims. The court consequently denied their motion for attorney's fees, relying on *Jacques All Trades Corp.* v. *Brown*, 57 Conn. App. 189, 752 A.2d 1098 (2000). That case involved protracted litigation concerning two different contracts. The trial court in that case awarded the named defendant $19,413.50 in attorney's fees related to her CUTPA counterclaim in regard to one of the contracts. Id., 195. On cross appeal, the named defendant claimed that the court should have awarded her $53,605.50 in attorney's fees incurred in the defense of the entire litigation. Id., 199 n.4. In rejecting that claim, we stated that § 42-110g (d) "relates solely to claims related to the prosecution of a CUTPA claim and not to all claims." Id., 200. Because the named defendant's CUTPA counterclaim related only to one of the two contracts involved in the parties' lengthy litigation, we determined that the court properly awarded her $19,413.50 in attorney's fees rather than $53,605.50. Id.

In the present case, the plaintiffs' breach of contract and negligence claims were related to their CUTPA claim because they depended on the same facts. As we stated in *Jacques All Trades Corp.*, § 42-110g (d) encompasses "claims related to the prosecution of a CUTPA claim"; id.; not only one claim explicitly labeled as a CUTPA claim. The court therefore should not have

ordered the plaintiffs to submit evidence apportioning their attorney's fees among their claims.[1]

In AC 26102, the judgment is reversed only as to the denial of the plaintiffs' motion for attorney's fees and the case is remanded for a hearing regarding the appropriate amount of attorney's fees. In AC 25624, the judgment is affirmed.

In this opinion the other judges concurred.

---

[1] We note that the plaintiffs requested $48,017.17 in attorney's fees and that the defendants have conceded that that request is reasonable.