GEORGE TAYLOR *v.* DAVID KING
(AC 30471)

Gruendel, Harper and Schaller, Js.

---

106

Argued February 9—officially released May 11, 2010

*Richard J. Pascal*, for the appellant (defendant).

*Ann Grunbeck Monaghan*, for the appellee (plaintiff).

*Opinion*

SCHALLER, J. The principal issue in this appeal requires us to determine whether a judgment as to liability and damages that is not final for purposes of appeal, issued within 120 days from the completion date of trial, and a subsequent judgment awarding attorney's fees and costs, which was issued more than 120 days after the completion date of trial, satisfies General Statutes § 51-183b.[1] The question must be answered by determining the date on which the trial was completed. We conclude that, because the completion date of trial was the date on which the court last heard argument on the issues of liability and damages before it rendered judgment on those issues, the trial court fully complied with § 51-183b.

The defendant, David King,[2] appeals from the judgment of the trial court, rendered after a civil trial to

[1] General Statutes § 51-183b provides: "Any judge of the Superior Court and any judge trial referee who has the power to render judgment, who has commenced the trial of any civil cause, shall have power to continue such trial and shall render judgment not later than one hundred and twenty days from the completion date of the trial of such civil cause. The parties may waive the provisions of this section."

[2] The complaint names the defendant as "David King [doing business as] King Building." "[I]t appears well settled that the use of a fictitious or assumed business name does not create a separate legal entity . . . [and that] [t]he designation [doing business as] . . . is merely descriptive of the person or corporation who does business under some other name . . . . [I]t signifies that the individual is the owner and operator of the business whose trade name follows his, and makes him personally liable for the torts and contracts of the business . . . ." (Internal quotation marks omitted.) *Monti* v. *Wenkert*, 287 Conn. 101, 135, 947 A.2d 261 (2008).

the court, in favor of the plaintiff, George Taylor. On appeal, the defendant claims that (1) the court rendered its decision more than 120 days after the completion date of trial in violation of § 51-183b, (2) the court improperly allowed the testimony of an expert witness, (3) the court improperly found that he was subject to the Home Improvement Act (act), General Statutes § 20-418 et seq., (4) if he was subject to the act, the court improperly failed to find that the plaintiff (a) waived compliance with the act and (b) claimed the act in bad faith, (5) the court's findings that (a) the plaintiff did not assent to the height of the garage at issue and (b) the defendant had substantial work remaining to be done on the project were clearly erroneous, (6) the court improperly awarded damages under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., because the plaintiff did not plead that the harm caused by the defendant was a result of a CUTPA violation, (7) the court abused its discretion in awarding attorney's fees (a) under CUTPA and (b) for legal services provided on posttrial motions and (8) the court improperly awarded expert witness fees under CUTPA. We reverse the judgment of the trial court as to the award of expert witness fees and affirm the judgment in all other respects.

The defendant's appeal has its genesis in a construction contract dispute between the plaintiff homeowner and the defendant contractor. The trial court found the following pertinent facts. "The plaintiff purchased the property at 307 Ferry Road, Old Lyme, a basic Cape Cod style home, in December, 2003, where he lived with his significant other, Susan Kelly. In 2004, the plaintiff and Kelly decided to do a major renovation and addition to the property. Among other improvements and renovations, the work included adding a full second floor and a garage. The plaintiff had to scale plans drawn up detailing the proposed addition-renovation in August,

2004. Al Bond, a local excavator and friend of the Kelly family, recommended the defendant for the framing on the project. The defendant is a registered home improvement contractor with the state of Connecticut, doing business as King Building for over twenty years. . . .

"The parties, including Kelly, had a meeting in mid-October, 2004, to discuss the renovation-addition project. At the meeting, the defendant represented that his crew was knowledgeable, insured and trained to handle this type of project. Subsequent to the meeting, the defendant gave the plaintiff a quote over the telephone for the discussed portion of the project, which the plaintiff accepted. The defendant commenced work on the project on October 28, 2004, a few days later. . . .

"By late December, 2004, the plaintiff discovered that the garage, as framed by the defendant, would not accommodate the eight foot doors contained in the building plans. Around that time, the plaintiff began to discover other deviations from the building plans, which caused him concern about the defendant's workmanship. In January, 2005, the relationship between the parties fell apart. As of January 19, 2005, the date of the last payment made by the plaintiff to the defendant, the plaintiff had paid $50,500 of the contracted amount of $52,425. Approximately only $2000 remained to be paid on the contract, although a lot of the work remained to be completed."

On December 29, 2006, the plaintiff commenced this action, alleging breach of contract, breach of warranty, negligent infliction of emotional distress, unjust enrichment and a violation of CUTPA. On March 2, 2007, the defendant answered, pleaded seven special defenses, a setoff and alleged a three count counterclaim. The presentation of evidence as to liability and damages began on March 5, 2008, and concluded on March 14,

2008. Briefs were filed on April 22, 2008, and argument was held on May 27, 2008. On September 24, 2008, the court rendered judgment as to liability and damages in favor of the plaintiff on all counts, found that the defendant failed to meet his burden of proof with respect to each count of his counterclaim and awarded the plaintiff damages of $110,000 (first decision).[3] The court deferred the issues of punitive damages, attorney's fees and costs awardable under CUTPA until a later hearing. Following the filing of supplemental briefs and a hearing on the plaintiff's motion for punitive damages, attorney's fees and costs, the court, on March 30, 2009, rendered its decision as to punitive damages, attorney's fees and costs. The court declined to award punitive damages but awarded the plaintiff $50,498.08 for attorney's fees and $3880.58 for costs (second decision). This appeal followed. Additional facts will be set forth as necessary.

I

The defendant's first claim on appeal is that the court rendered judgment more than 120 days after the completion date of trial in violation of § 51-183b. Specifically, he argues that the completion date of trial was April 22, 2008, more than 120 days prior to the court's issuing its first decision regarding liability and damages, that the court could not have opened the case and that the case was not still open on October 21, 2008, and, even if October 21, 2008, represents the completion date of trial, the court nonetheless violated § 51-183b by not rendering its decision regarding punitive damages, attorney's fees and costs until March 30, 2009. The plaintiff argues that the completion date of trial was January 12, 2009, and also that the defendant consented to the

---

[3] The plaintiff did not brief or address the unjust enrichment count before the trial court, which deemed it abandoned.

delay by not filing an objection with the court.[4] Because we conclude that the completion date of trial was May 27, 2008, and that the court's September 24, 2008 memorandum of decision represented a judgment for purposes of § 51-183b, the court complied with the statute.

The following facts are relevant for the resolution of the defendant's claim. The presentation of evidence began on March 5, 2008, and lasted until March 14, 2008, at which time the court requested that briefs be filed and argued. Briefs were filed on April 22, 2008, argument was held on May 27, 2008,[5] and the court issued its first decision as to liability and damages on September 24, 2008. The court found in favor of the plaintiff but made no ruling on September 24, 2008, as to punitive damages, attorney's fees and costs.

On October 21, 2008, the court held a hearing on the issue of punitive damages, at which time the court

[4] The plaintiff argues that the defendant consented to the proceedings by not filing an objection. He cites *Rowe* v. *Goulet*, 89 Conn. App. 836, 845, 875 A.2d 564 (2005), for the proposition that "consent may be implied from the conduct of the parties or their attorneys, in proceeding without objection with the trial or argument of the case, in remaining silent until the judgment has been rendered or in failing to object seasonably after the filing of the decision." It is clear from the record, however, that the defendant filed an objection to the late judgment and a motion to vacate dated October 1, 2008.

The plaintiff also argues, with relation to all of the defendant's claims, that the defendant has not sustained his burden of providing the court with an adequate record for review in accordance with Practice Book § 61-10. Although the defendant provided a sparse record, we are able to decide each issue on grounds for which the record is sufficient.

[5] There is some dispute as to what occurred at the May 27, 2008 appearance before the court. The defendant claims that parties were able to "respond to the questions raised by the court and, to the extent permitted, argue points made in the briefs," and that because no evidence was put before the court at this time, it should not be considered when determining the conclusion date of trial. The plaintiff characterized the proceeding as an opportunity for "closing statements and argument . . . ." Although the defendant did not provide us with a transcript of this court proceeding, both parties represent that a proceeding occurred and that argument was given, which is sufficient for our evaluation of this claim.

suggested that it could open the case, or that the case was still open, as to the issues of punitive damages, attorney's fees and costs because evidence on those issues was not complete and that it had not rendered final judgment for purposes of appeal. The defendant filed a supplemental brief regarding punitive damages, attorney's fees and costs on October 27, 2008. The plaintiff filed his brief on October 31, 2008, and Ann Grunbeck Monaghan, the plaintiff's counsel, filed her affidavit of attorney's fees on November 3, 2008. At some time in January, 2009, fewer than 120 days prior to the issuance of the second decision on March 30, 2009, an argument regarding the plaintiff's motion to compel and for attorney's fees, dated December 1, 2008, took place before the court. Thereafter, on March 30, 2009, the court issued its decision as to punitive damages, attorney's fees and costs, awarding $50,498.08 for attorney's fees and $3880.58 for costs.

The defendant first argues that the completion date of trial was April 22, 2008, the date posttrial briefs were filed and more than 120 days prior to the court's issuing its first decision.[6] The plaintiff counters that January 12, 2009, was the completion date of trial, as that was the date of the final argument prior to the court's issuing its second, and final, decision. We conclude that both parties have missed the mark and that the completion date of trial for purposes of § 51-183b was May 27, 2008.

---

[6] The defendant argues that Practice Book § 11-19 supports his position. Practice Book § 11-19 (a) provides in relevant part: "Any judge of the superior court and any judge trial referee to whom a short calendar matter has been submitted for decision, with or without oral argument, shall issue a decision on such matter not later than 120 days from the date of such submission, unless such time is waived by the parties. In the event that the judge or referee conducts a hearing on the matter and/or the parties file briefs concerning it, the date of submission for purposes of this section shall be the date the matter is heard or the date the last brief ordered by the court is filed, whichever occurs later. . . ." Although this section is instructive, this case does not involve a short calendar matter, and, thus, our conclusion is based on other relevant legal principles.

Section 51-183b provides in relevant part: "Any judge of the Superior Court . . . who has commenced the trial of any civil cause . . . shall render judgment not later than one hundred and twenty days from the *completion date of the trial of such civil cause. . . .*" (Emphasis added.) In construing this phrase, our Supreme Court has stated: "In determining that 'the completion date' includes the filing of briefs, the trial court held that briefing of the legal issues was a component of the judicial gathering of the materials necessary to a well-reasoned decision. In related contexts, 'completion' has been held to encompass the availability of all the elements directly or indirectly to be considered in the rendering of a decision. See *Bankamerica Corporation* v. *Board of Governors*, 596 F.2d 1368, 1378 (9th Cir. 1979); *Lloyd* v. *Illinois Regional Transportation Authority*, 548 F. Sup. 575, 590 (N.D. Ill.1982)." *Frank* v. *Streeter*, 192 Conn. 601, 604, 472 A.2d 1281 (1984).

Although the appellant did not provide a transcript for the May 27, 2008 hearing; see Practice Book § 61-10 (appellant responsible for providing adequate record for review); both parties agree that they appeared before the court that day and engaged in argument. The plaintiff claims that the parties were able "to make closing arguments and to address the legal issues presented at trial." The defendant characterizes the hearing as an opportunity "to provide (only) argument" and notes that "no evidence was then taken . . . ." Regardless of whether evidence was taken, and despite the fact that the case law cited by both parties considers the filing of posttrial briefs as the completion of trial, there can be no doubt that the hearing could be "considered in the rendering of a decision." *Frank* v. *Streeter*, supra, 192 Conn. 604. Neither party, nor we, could find a case in which this issue was decided with respect to argument following the filing of posttrial briefs.

Because it is unquestionable that this postbrief argument could be considered in the court's decision, however, we conclude that, under the circumstances of this case, May 27, 2008, was the completion date of trial.

The defendant does not dispute that the court's first decision was issued within 120 days of the parties' May 27, 2008 argument. He argues alternatively, however, that the court violated § 51-183b by not rendering its final judgment until March 30, 2009, over 120 days from the completion date of trial.[7] Even if we assume that this argument is viable given our decision that May 27, 2008, was the completion date, we note that the argument is based on a misapprehension of the term "judgment." The defendant misconstrues the term judgment as it is used in § 51-183b with the concept of a final judgment for purposes of appeal.[8] Because § 51-183b requires only a judgment within 120 days of the

[7] The defendant argues that if the case was still open on October 21, 2008, or if the court opened the case on that day, this marked the completion date of trial, and the court did not render judgment until March 30, 2009, more than 120 days later. The record presented to us by the defendant does not make clear what occurred after the October 21, 2008 hearing. See Practice Book § 61-10 ("[i]t is the responsibility of the appellant to provide an adequate record for review"). The parties present differing accounts of what occurred between October 21, 2008, and the court's issuing of its second decision on March 30, 2009. Without being able to determine conclusively what occurred after October 21, 2008, we would not be in a position to determine what day represents the completion date of trial on the basis of the defendant's alternate theory and therefore would be unable to determine whether the second decision was issued within 120 days of an unknown date.

[8] The defendant looks for support from *Paranteau* v. *DeVita*, 208 Conn. 515, 544 A.2d 634 (1988), and its progeny. There, our Supreme Court held that "a judgment on the merits is final for purposes of appeal even though the recoverability or amount of attorney's fees for the litigation remains to be determined." Id., 523. That case does not support the defendant's claim, however, because it relates to a judgment's being final for purposes of appeal and not merely being a judgment for the purpose of satisfying § 51-183b. Furthermore, it is clear that a judgment is not final for the purpose of a CUTPA claim until the issue of punitive damages has been resolved. *Perkins* v. *Colonial Cemeteries, Inc.*, 53 Conn. App. 646, 649, 734 A.2d 1010 (1999).

completion date of trial, and the first decision represented a judgment on the merits of the case, the court complied with the statute.

Section 51-183b provides in relevant part: "Any judge of the Superior Court . . . who has commenced the trial of any civil cause . . . shall render *judgment* not later than one hundred and twenty days from the completion date of the trial of such civil cause. . . ." (Emphasis added.) This court previously has determined that a court's judgment of strict foreclosure that did not set law days was a judgment for purposes of § 51-183b, even though the judgment was not final for purposes of appeal. "Although the trial court's judgment was not final for purposes of an appeal, it fulfilled the trial court's statutory obligation to render a judgment within 120 days after the conclusion of the trial." *L & R Realty* v. *Connecticut National Bank*, 53 Conn. App. 524, 548, 732 A.2d 181, cert. denied, 250 Conn. 901, 734 A.2d 984 (1999). The decision of this court in *L & R Realty* reveals that the statute is intended to set a time limit for a court to render a judgment on the merits of a case, not to set a deadline for the court to issue a final judgment for purposes of appeal.

The theory that § 51-183b is meant only to impact the time frame in which a court must render judgment is bolstered by our Supreme Court's interpretation of the purpose of General Statutes (Rev. to 1972) § 51-29,[9] the predecessor statute to § 51-183b. In *Gordon* v. *Feldman*, 164 Conn. 554, 325 A.2d 247 (1973), the court stated: "The statute was designed to ensure that, in a

[9] As quoted in *Gordon* v. *Feldman*, 164 Conn. 554, 325 A.2d 247 (1973), and prior to being transferred in 1997 to § 51-183b, § 51-29 provided: "Any judge of the superior court or the court of common pleas, who has commenced the trial of any civil cause, shall have power to continue such trial and render judgment after the expiration of the term or session of the court at which such trial was commenced; but such trial shall be ended and judgment rendered therein before the close of the next term or session."

case tried to the court, the judge consider and decide the controversy expeditiously and within a reasonably brief period after trial. . . . The salutary effect of the statute is to compel diligence and a prompt decision on the part of the judge who tried the case, and to avoid the manifest disadvantages attendant on long delay in rendering judgment. On the other hand, however, judicial economy dictates that the parties will be deemed to have consented to the delay if they fail to take timely and appropriate advantage of it. . . . Thus the statute . . . attempts to balance judicial expediency with fairness to the parties and to reduce delays over which counsel have little, if any, control." (Citations omitted.) Id., 556–57; see also *Matthews* v. *Nagy Bros. Construction Co.*, 88 Conn. App. 787, 792, 871 A.2d 1067 (applying rationale of *Gordon* to § 51-183b), cert. denied, 274 Conn. 907, 876 A.2d 1199 (2005). Section 51-183b is in place to ensure action on the part of the court in deciding the merits of the case, not to guarantee that the losing party will have a final judgment from which to appeal within 120 days of the completion of trial.

Here, the court issued its first decision within 120 days from the completion of trial. In that memorandum of decision, the court rendered judgment on the merits of the case in favor of the plaintiff on all counts, found that the defendant failed to meet his burden of proof with respect to each count of his counterclaim and awarded the plaintiff damages of $110,000. Although the court sought an additional hearing on the issues of punitive damages, attorney's fees and costs, the first decision constituted a judgment for the purposes of § 51-183b. The court could not have decided the issues of punitive damages, attorney's fees and costs because those issues were not argued or briefed in the parties' posttrial briefs. It was not until after the merits of the case were decided that the parties submitted their supplemental briefs regarding punitive damages, attorney's fees and costs.

We recognize that our conclusion leads to an outcome in which, so long as a trial court decides a case on its merits within 120 days but defers deciding other ancillary issues such as punitive damages, attorney's fees and costs, there is no statutory time limit within which it must decide those ancillary issues. As our Supreme Court has stated, however: "Delay in the trial courts is not remedied by affording disappointed litigants automatic access to new trials whenever the just resolution of their cases requires time for study and reflection." *Frank* v. *Streeter*, supra, 192 Conn. 605. Although the structure of this trial delayed the rendering of a final judgment for purposes of appeal until nearly one year after the filing of posttrial briefs; see *Perkins* v. *Colonial Cemeteries, Inc.*, 53 Conn. App. 646, 649, 734 A.2d 1010 (1999) (judgment not final for purposes of appeal until issue of CUTPA punitive damages has been resolved); the court properly complied with the statutory obligation set forth by § 51-183b.

## II

The defendant next claims that the court improperly allowed the plaintiff to present the testimony of an expert witness, Brian Jermainne. Specifically, he contends that because Jermainne was not a real estate appraiser within the definition provided in General Statutes § 20-500 (10), he was legally incapable of testifying as to the fair market value of the plaintiff's home or the diminution in value of the property as a result of the work done by the defendant. We are not persuaded.

On September 26, 2007, the plaintiff filed a disclosure of expert witnesses with the court. The plaintiff disclosed that he intended to call two experts, Stephen Spurrell and Jermainne. Spurrell was to testify that the work done by the defendant was not completed according to the architect's specifications or to industry

standards. Jermainne was to testify about the diminution in value of the plaintiff's home as a result of the work done by the defendant. The defendant objected to the disclosure of the expert witnesses and moved to preclude their testimony. The court overruled the objection and denied the motion.

Jermainne testified at trial on March 6, 2008. He explained that he had been a Realtor for eight years and held numerous designations, including certified residential specialist, accredited buyer representative, accredited seller representative and a graduate of Realtor Institute. On the basis of his expertise and experience, Jermainne estimated that had the construction been completed according to the plans, the value of the house would have been between $900,000 and $925,000 but that as a result of the work that was done, the value of the house was likely between $800,000 and $825,000.[10]

"The trial court has wide discretion in ruling on the qualification of expert witnesses and the admissibility of their opinions. . . . The court's decision is not to be disturbed unless [its] discretion has been abused, or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) *Hutchinson* v. *Andover*, 49 Conn. App. 781, 788, 715 A.2d 831 (1998).

General Statutes § 20-501 (a) provides in relevant part: "No person shall act as a real estate appraiser or provisional appraiser or engage in the real estate appraisal business without the appropriate certification, license, limited license or provisional license issued by the commission . . . ." Section 20-500 (10) defines a "real estate appraiser" as "a person engaged in the business of estimating the value of real estate

---

[10] The court referenced this testimony in awarding $100,000 to the plaintiff in damages on his breach of contract claim.

for a fee or other valuable consideration," and § 20-500 (5) defines "engaging in the real estate appraisal business" as "the act or process of estimating the value of real estate for a fee or other valuable consideration."

"Section 20-501 is a licensing statute and does not preclude a witness from testifying as to his opinion of the diminution in value of the plaintiff's property, where the trial court found that the witness' education, training and experience qualified him to testify as an expert . . . ." *Hutchinson* v. *Andover*, supra, 49 Conn. App. 789. Furthermore, § 20-500 (5) does not include testifying as to the value of property or diminution in value of certain property within the definition of "engaging in the real estate appraisal business." The court did not abuse its discretion in admitting Jermainne's testimony.

### III

The defendant also claims that the court improperly found that he was subject to the act. He argues that the plaintiff was the general contractor and that he was merely a subcontractor on the construction project. On that basis, he argues that he falls beyond the scope of the act.[11] We disagree.

Before addressing the merits of the defendant's claim, we first must determine the applicable standard of review. The question of whether a home improvement

---

[11] The plaintiff argues that the defendant is a contractor as that term is defined by the act. General Statutes § 20-419 (3) defines a "contractor" as "any person who owns and operates a home improvement business or who undertakes, offers to undertake or agrees to perform any home improvement. . . ." On the basis of this definition, the plaintiff contends that it is clear that the defendant is a contractor because he agreed to perform home improvement on the plaintiff's house. Although this argument is logical and supported by the record, because our Supreme Court has held that the determination of whether a home improvement service provider is acting as a contractor or a subcontractor is a question of fact; see *Meadows* v. *Higgins*, 249 Conn. 155, 171–72, 733 A.2d 172 (1999); we must review the factual findings of the trial court..

service provider is acting as a contractor or a subcontractor is one of fact. *Meadows* v. *Higgins*, 249 Conn. 155, 168, 171–72, 733 A.2d 172 (1999). "Thus, our review of the trial court's determination of that issue is limited by the deference we afford factual findings. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In applying the clearly erroneous standard to the findings of a trial court, we keep constantly in mind that our function is not to decide factual issues de novo. Our authority, when reviewing the findings of a judge, is circumscribed by the deference we must give to decisions of the trier of fact, who is usually in a superior position to appraise and weigh the evidence. . . . The question for this court . . . is not whether it would have made the findings the trial court did, but whether in view of the evidence and pleadings in the whole record it is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *MJM Landscaping, Inc.* v. *Lorant*, 268 Conn. 429, 436–37, 845 A.2d 382 (2004).

In his brief, the defendant supports his claim by arguing that the plaintiff (1) set the scope of the project by obtaining and modifying plans, (2) borrowed more money for the project than was necessary to pay for the defendant's share, (3) took out a building permit for the defendant's work, (4) hired, paid and supervised other parties, whom the defendant characterizes as subcontractors, including, but not limited to, someone to do the concrete work, someone to install a pool, and a plumber, and (5) paid for materials from a supply

house on his own account. The plaintiff's role is not the relevant inquiry in resolving this claim. We must determine whether it was clearly erroneous for the court to have found that the defendant was a contractor, as contemplated by the act.

The court made the following findings of fact concerning this issue. "On or about November 13 or 14, 2004, two weeks after the defendant's work had commenced, the defendant presented the plaintiff with a written contract. The contract provides, in material part, that the defendant is to complete the following construction work: '[R]emove existing rear porch and house roof. Provide concrete foundation for the new garage, retaining wall, rear utility space and front porch sonatube's. Frame new roof, front porch, rear addition, and garage as per plan. Install trim on facia and rake's only. Shingle all new roofs.' The contract further provides that the estimated time for completion for the project is ten weeks from the start date. With regard to the cost for [the] project, the contract provides as follows: $52,425 in carpentry labor, $8325 for concrete work and $100/square for the shingling of the roofs. The written contract further provides that, in addition to the workmanlike performance of the work stated above, the defendant shall be responsible for providing an excavating contractor for $5100. With regard to the payment terms, the contract states that the stipulated contract price shall be paid as a weekly draw based on the percentage of completion, with checks to be made payable to [the defendant]. In addition, the contract states that it is the entire agreement between the parties, that it may only be altered in writing and that the homeowner has seventy-two hours after signing the agreement to cancel. The contract was never signed by either party. There was no further description of the work to be completed by the defendant at the plaintiff's residence, nor did the contract specify how changes

would be addressed other than to state that any alterations to the agreement must be in writing. The contract did not contain the defendant's address or his registration identification with the state of Connecticut department of consumer protection. The defendant did not give the plaintiff notice of his cancellation rights prior to commencing work on the project. Furthermore, in the text of the contract, which the defendant drafted, the defendant refers to himself as 'contractor.'

"Neither party raised the issue of a signed contract while the work was ongoing. The roof, the original second floor and the kitchen were removed in the early stages of construction. Although the plaintiff and Kelly lived in the premises during construction and monitored the work as it progressed, the defendant was in charge of the work site. Despite numerous changes from the original plans, the defendant never documented in writing any change orders or associated costs."

As an initial matter, it is important to note that the defendant does not have to be a *general* contractor to fall within the purview of the act. Rather, the act requires only that he be a *contractor* as opposed to a *subcontractor*. See General Statutes § 20-418 et seq.; *Meadows* v. *Higgins*, supra, 249 Conn. 167. A review of the record reveals that there can be no doubt that the defendant acted as a contractor for this home improvement project. He had a contract with the plaintiff, not another contractor,[12] for the work that was to

---

[12] The defendant cites to Superior Court cases that stand for the proposition that a homeowner can be his own general contractor, and, thus, the people with whom he contracts are his subcontractors; *Verrico* v. *Dudek*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-01-0187006 (February 15, 2002); *McClain* v. *Byers*, Superior Court, judicial district of Fairfield, Docket No. CV-93-0301761-S (May 6, 1997) (19 Conn. L. Rptr. 400); and the plaintiff cites to cases holding the opposite. *Victory* v. *Morris Construction Co.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-96-0152254 (April 7, 1998); *Fromm* v. *FAS Designer & Builders, Inc.*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-97-0160094 (March 16, 1998) (21 Conn. L. Rptr. 494). It does not appear that this issue has been addressed by an appellate

be done, and that contract even referred to him as a contractor. He was paid directly by the plaintiff for the work he completed, not by another contractor. The record supports the court's conclusion that the defendant was a contractor and, accordingly, was bound by the act.

## IV

Next, the defendant claims that, if he was subject to the act, the court improperly failed to find that the plaintiff (1) waived compliance with the act and (2) claimed the act in bad faith. Specifically, he argues that the plaintiff failed to sign the contract and now seeks to avoid having to pay for the work done by asserting noncompliance with the act. We disagree.

## A

The defendant first argues that the plaintiff waived the requirements of General Statutes (Rev. to 2003) § 20-429 when he failed to sign the contract. General Statutes (Rev. to 2003) § 20-429 (a) provides: "No home improvement contract shall be valid or enforceable against an owner unless it: (1) Is in writing, (2) is signed by the owner and the contractor, (3) contains the entire agreement between the owner and the contractor, (4) contains the date of the transaction, (5) contains the name and address of the contractor, (6) contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740, (7) contains a starting date and completion date, and (8) is entered into by a registered salesman or registered contractor. Each change in the terms and conditions of a contract shall be in writing and shall be signed by the owner and contractor, except that the commissioner may, by regulation, dispense with the necessity for complying with

court in this state. Because this issue is not directly implicated in this case, we need not decide it.

the requirement that each change in a home improvement contract shall be in writing and signed by the owner and contractor." The defendant contends that he complied with the "salient portions" of this section and that the plaintiff's failure to sign the contract should be construed as a waiver of the act's protections. We disagree.

In addressing a similar claim, our Supreme Court has said: "Clearly, the legislature is entitled, in the first instance, to impose the burden of compliance with the statute on the professional, the contractor, rather than on the nonprofessional, the consumer. . . . The objective of the act is to promote understanding by the consumer, to ensure his ability to make an informed decision and to protect him from substantial work by an unscrupulous contractor." (Citation omitted; internal quotation marks omitted.) *Habetz* v. *Condon*, 224 Conn. 231, 239, 618 A.2d 501 (1992). Under the facts of this case, the plaintiff cannot be held responsible for the defendant's failure to comply with the act. The defendant, after presenting the plaintiff with the contract, did not again demand that the plaintiff sign the contract before proceeding with the work. He also violated other provisions of General Statutes (Rev. to 2003) § 20-429 (a) by not giving notice of the plaintiff's cancellation rights before beginning work and by not including his address. Furthermore, the defendant never documented any changes from the original plan in writing. The defendant failed to comply with the act, and the fact that the contract was not signed by *either* party is not evidence that the plaintiff waived compliance with the act.

## B

The defendant also argues that the court should have found that the plaintiff acted in bad faith by entering into the agreement, not signing the contract and now seeking protection by claiming that the defendant failed

to comply with the act. As noted previously, the defendant did not comply with the act, and there is nothing in the record to suggest that the plaintiff's claiming the act was done in bad faith.

The defendant seeks support from our Supreme Court's decision in *Habetz* v. *Condon*, supra, 224 Conn. 231. There, Peter Habetz, Jr., the plaintiff homeowner, requested that work in addition to the original contract be performed but never signed the proposal despite repeated requests to do so by Ken Condon, the defendant contractor. Id., 233. The plaintiff refused to pay the money owed for this extra performance and brought an action, claiming breach of contract due to defective, improper and negligent work, breach of the statutory requirements of the act, violation of CUTPA and negligence resulting in his sustaining emotional distress and financial loss. Id., 234. Condon filed a counterclaim in two counts, alleging that Habetz failed to pay $10,000 owed under the written, signed contract and failed to pay for the extras that Condon had performed at Habetz' request. Id. Habetz asserted the special defenses that the writing requirements of the act, as well as General Statutes § 42-135a, the notice provision of the Home Solicitation Sales Act; General Statutes § 42-134a et seq.; had not been satisfied. *Habetz* v. *Condon*, supra, 234. In his answer, the defendant denied the statutory violations. Id.

The court stated that "a contractor, otherwise precluded from recovering moneys owed for his work because of a violation of the act, must be permitted to assert that the homeowner's bad faith precludes him from safely repudiating the contract and hiding behind the act in order to bar the contractor's recovery." Id., 238. It continued: "To deny the contractor any opportunity of recovery after he has completed his end of the bargain if he has persuaded the trier of fact that a statutory remedy is being invoked by a homeowner in

bad faith would be to countenance a gross injustice and indeed to encourage its perpetuation and to assure its success." Id., 240. The court then affirmed the trial court's finding in favor of Habetz on his breach of contract claim and Condon's counterclaim of bad faith.

The present case is distinguishable from *Habetz*. As an initial matter, as noted previously, the defendant's noncompliance with the act was not merely the failure to have a signed contract. In this case, the defendant did not comply with several other portions of General Statutes (Rev. to 2003) § 20-429. Also, there is no evidence that he ever asked the plaintiff about signing the contract after he gave it to him initially. Additionally, the evidence in this case does not indicate that the plaintiff merely was seeking to avoid paying for the defendant's work but, rather, that the defendant's work was substandard and reduced the anticipated value of the house by approximately $100,000. The fact that the plaintiff did not sign the contract is not a sufficient basis for us to conclude that the court improperly failed to find that the plaintiff claimed the act in bad faith.

V

The defendant also claims that the court's findings that (1) the plaintiff did not assent to the height of the garage and (2) the defendant had substantial work remaining on the project were clearly erroneous. We disagree.

"Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it,

the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . The court, as the sole arbiter of credibility, is free to accept or reject, in whole or in part, the testimony offered by either party." (Citation omitted; internal quotation marks omitted.) *Blacker* v. *Crapo*, 112 Conn. App. 795, 804–805, 964 A.2d 1241, cert. denied, 291 Conn. 915, 970 A.2d 727 (2009).

A

The following additional facts are relevant for the resolution of the defendant's claim. In December, 2008, the plaintiff realized that the garage had been framed improperly and would not accommodate the planned eight foot tall garage doors. When he brought this to the attention of the defendant and asked him if he had referred to the plans, the defendant responded that he had not. The defendant offered to cut into the header that supported the second story in order to accommodate the eight foot tall garage doors.

At trial, Spurrell, the plaintiff's construction expert, testified that the problems with the garage door height began with the concrete work that was done and that according to the construction contract, the defendant was responsible for the concrete work. The incorrect concrete work led to there not being sufficient room for the eight foot tall garage doors.

The defendant now contends that it was the excavation, completed by Bond, not the defendant, which set the height of the garage, not the concrete work, as Spurrell opined. He further argues, as he testified at trial, that the plaintiff assented to the height of the garage after Bond expressed concerns that water would seep into the garage unless the garage floor was raised. The court explicitly credited Spurrell's testimony. On the basis of the court's findings regarding this testimony, as well as the plaintiff's own testimony, there is

sufficient evidence in the record for us to conclude that the court did not improperly find that the plaintiff did not assent to the height of the garage.

B

The defendant also claims that the court improperly found that there was substantial work remaining to be done on the project. He argues that he was excused from completing work on the project when the plaintiff breached their contract by not paying the bill dated January 27, 2005. The defendant seems to ignore the fact that he admitted on cross-examination that he had not completed a number of items when he left the job, including the installation of windows, doors, roof shingles and trim, and additional work to the back porch and joists. It is also noteworthy that the court, in its first decision, stated: "The defendant is not credible in his testimony as to the last day he worked on the plaintiff's house or to the extent of the work he performed, either in fulfillment of the original contract or as to the extras." As the court was in the better position to determine credibility; see *Gallo-Mure* v. *Tomchik*, 78 Conn. App. 699, 715, 829 A.2d 8 (2003) (trial court better able to determine issues of credibility because it observes demeanor of witnesses, and appellate courts have only dry record of testimony); and on the basis of the evidence in the record, we cannot conclude that the court improperly found that the defendant had substantial work remaining on the project.

VI

The defendant also appears to claim that the court improperly awarded damages under CUTPA because the plaintiff did not plead that the harm caused by the defendant was a result of a violation of CUTPA, namely, the failure to have contract to comply with the terms of General Statutes (Rev. to 2003) § 20-429. We decline to review this claim.

In his brief, the defendant argues: "The trial court found that [the] defendant had violated CUTPA by not having a contract in compliance with the [act] . . . . As the case was pleaded by [the] plaintiff, no damages can be awarded under CUTPA.

"Case law has also established that even an undisputed or per se violation of the [act] by means of a contract not complying with the requirements of [§ 20-429] would not be grounds, without more, for the award of damages. . . . [E]ven with a per se violation, there is still a need to determine that the violation (as compared to something else) caused the harm, a harm, we contend, that had to have been pleaded." (Citations omitted.)

We are unable to make sense of the defendant's claim. It appears that the defendant is contesting the court's awarding of punitive damages. The court, however, declined to award punitive damages because "there is nothing in the record that indicates an intention on the defendant's part to do 'wanton and malicious injury' to the plaintiff." Because the defendant's brief is unclear as to how the legal principles he cites apply to the case at hand, we consider this claim inadequately briefed and decline to afford it review. See, e.g., *Ruggiero* v. *Pellicci*, 294 Conn. 473, 481 n.5, 987 A.2d 339 (2010) (claim inadequately briefed when no attempt made to apply black letter law to facts of present case).

## VII

Next, the defendant claims that the court abused its discretion in awarding attorney's fees (1) under CUTPA and (2) for work done on posttrial motions. We disagree.

"Awarding . . . attorney's fees under CUTPA is discretionary; General Statutes § 42-110g (a) and (d) . . . and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or

injustice appears to have been done." (Internal quotation marks omitted.) *MedValUSA Health Programs, Inc.* v. *MemberWorks, Inc.,* 109 Conn. App. 308, 315, 951 A.2d 26 (2008). "This standard applies to the amount of fees awarded . . . and also to the trial court's determination of the factual predicate justifying the award. . . . Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Citations omitted; internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.,* 265 Conn. 210, 252–53, 828 A.2d 64 (2003).

## A

The defendant argues that the court abused its discretion by awarding the plaintiff attorney's fees under § 42-110g not only for services provided on the CUTPA claim but for all services provided on the case. He cites *Jacques All Trades Corp.* v. *Brown,* 57 Conn. App. 189, 200, 752 A.2d 1098 (2000), for the proposition that "[i]n the absence of abuse of discretion, the court can award attorney's fees under CUTPA only for those expenses that were related to the prosecution of a CUTPA claim." The plaintiff argues that a case decided subsequent to *Jacques All Trades Corp.* holds that when the facts underlying the CUTPA claim are indistinguishable from those facts relating to other claims, "§ 42-110g (d) encompasses claims related to the prosecution of a CUTPA claim . . . not only one claim explicitly labeled as a CUTPA claim." *Heller* v. *D. W. Fish Realty Co.,* 93 Conn. App. 727, 735, 890 A.2d 113 (2006). We agree with the plaintiff.

Section 42-110g (d) provides in relevant part: "In any action brought by a person under this section, the court

may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery. . . ." In addressing the issue of attorney's fees, the court stated: "As in *Heller*, the plaintiff's claims of breach of contract, breach of warranty, negligent infliction of emotional distress and violation of the [act]-CUTPA depend on the same facts and circumstances. The court finds that apportioning the attorney's fees based on the [act]-CUTPA claim alone would be impermissibly difficult, as the facts and circumstances which gave rise to the other claims all related to the [act]-CUTPA violations, and all of [the] plaintiff's claims arose out of the home improvement activities performed by the defendant, as defined by the [act]." We conclude that the court did not abuse its discretion but, rather, correctly applied the law as stated in *Heller* to the facts of this case and arrived at a reasonable conclusion.

B

The defendant also argues that the court abused its discretion in awarding attorney's fees for services provided on posttrial motions. We disagree.

As noted by the court, our Supreme Court recently addressed a similar claim and held: "It [is] within the trial court's discretion to award additional fees on the supplemental motion for work on posttrial motions after that date." *Stokes* v. *Norwich Taxi, LLC*, 289 Conn. 465, 494, 958 A.2d 1195 (2008). The record establishes that the plaintiff's posttrial brief clearly indicated that it was intended to seek recovery for attorney's fees and costs in full. It was within the court's discretion to award additional fees on the supplemental motion for work on posttrial motions after that date.

## VIII

The defendant's final claim is that the court improperly awarded expert witness fees under CUTPA. We agree and reverse the court's awarding of those fees.

This court recently addressed this issue in *Centimark Corp.* v. *Village Manor Associates Ltd. Partnership*, 113 Conn. App. 509, 967 A.2d 550, cert. denied, 292 Conn. 907, 973 A.2d 103 (2009). "It is a settled principle of our common law that parties are required to bear their own litigation expenses, except as otherwise provided by statute. . . .

"*Miller* [v. *Guimaraes*, 78 Conn. App. 760, 829 A.2d 422 (2003)] is dispositive of this issue. In that case, [this court] held that the trial court's award to homeowners of $1000 as taxable costs for an expert who was an attorney was improper in an action to recover damages under CUTPA because there was no statutory authority under General Statutes § 52-260 for such an award. . . . [Section] 52-260, relating to witness fees, sets forth the court's authority to award expert witness fees in civil litigation. Within the statute, there is an enumeration of the categories of experts entitled to a discretionary award of expert witness fees. . . . Expert witness fees for roofing consulting firms are not included within that enumeration." (Citations omitted; internal quotation marks omitted.) *Centimark Corp.* v. *Village Manor Associates Ltd. Partnership*, supra, 113 Conn. App. 540–41. Similarly, § 52-260 does not provide expert witness fees for construction experts.[13] Accordingly, we

[13] General Statutes § 52-260 provides: "(a) The fees of a witness for attendance before any court, the General Assembly or any committee thereof, when summoned by the state, or before any legal authority, shall be fifty cents a day, and for travel to the place of trial, except as provided in section 54-152, shall be the same amount per mile as provided for state employees pursuant to section 5-141c. Whenever a garnishee is required to appear before any court, such garnishee shall receive the same fees as a witness in a civil action and be paid in the same manner. The clerk of the Superior Court, upon request, shall, on the day of attendance, pay the fee of any witness summoned by the state to appear before the court.

conclude that the court's awarding the plaintiff expert

"(b) When any regular or supernumerary police officer or any regular, volunteer or substitute firefighter of any town, city or borough is summoned to testify in any criminal proceeding pending before the Superior Court or the Department of Consumer Protection and the police officer or firefighter receives no compensation from the town, city or borough by which he is employed for the time so spent by him, the police officer or firefighter shall be allowed and paid one hundred dollars, together with the mileage allowed by law to witnesses in criminal cases, for each day he is required to attend the proceedings.

"(c) When any regular or supernumerary police officer or any regular or substitute firefighter is summoned to testify in his capacity as a police officer or firefighter in any court in a civil action and the police officer or firefighter receives no compensation from the municipality by which he is employed for the time he is in attendance at court, there shall be allowed and paid to the police officer or firefighter a witness fee of one hundred dollars, together with the mileage allowed by law to witnesses in criminal cases, for each day he is required to attend court. If the police officer or firefighter testifies in any such proceeding or civil action on a vacation day or compensatory day off, he shall be paid the sum of one hundred dollars, together with the mileage allowed by law, notwithstanding the fact that he is receiving compensation for such day from the town, city or borough by which he is employed.

"(d) The amounts paid under subsections (b) and (c) of this section shall be taxed as a part of the costs, and shall be in lieu of all other witness fees payable to such police officer or firefighter.

"(e) When any person is confined in a community correctional center upon the allegation of the state's attorney that he will be a material witness in a pending criminal proceeding, he shall receive, in addition to his legal fees as a witness, two dollars for each day that he is so confined.

"(f) When any practitioner of the healing arts, as defined in section 20-1, dentist, registered nurse, advanced practice registered nurse or licensed practical nurse, as defined in section 20-87a, psychologist or real estate appraiser gives expert testimony in any action or proceeding, including by means of a deposition, the court shall determine a reasonable fee to be paid to such practitioner of the healing arts, dentist, registered nurse, advanced practice registered nurse, licensed practical nurse, psychologist or real estate appraiser and taxed as part of the costs in lieu of all other witness fees payable to such practitioner of the healing arts, dentist, registered nurse, advanced practice registered nurse, licensed practical nurse, psychologist or real estate appraiser.

"(g) When any public accountant licensed under chapter 389 is subpoenaed by any party, other than the state, to testify in his capacity as a public accountant in any action or proceeding, the court shall determine a reasonable fee to be paid to the public accountant and such fee shall be paid by the party issuing such subpoena."

witness fees for Spurrell, the plaintiff's construction expert, was improper.

The judgment is reversed only as to the award of expert witness fees and the case is remanded with direction to vacate that award. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.