ALICE FREEMAN *v.* ALAMO MANAGEMENT
COMPANY ET AL.
(14271)

PETERS, C. J., SHEA, GLASS, COVELLO, and BORDEN, Js.

Argued December 10, 1991—decision released April 21, 1992

*Joseph Procopio,* with whom was *Thomas R. Frizzell,* for the appellants-appellees (defendants).

*Thomas W. Calkins,* for the appellee-appellant (plaintiff).

PETERS, C. J. The dispositive issue in this appeal is whether, in an action for unlawful entry and detainer under General Statutes § 47a-43 (a) (3),[1] entitlement to an award of statutory punitive damages, pursuant to General Statutes § 47a-46,[2] may be established by a preponderance of the evidence. The plaintiff, Alice Freeman, brought an action for damages against the defendants, Alamo Management Company, and Dwayne Boise, to recover for the forcible entry into her apartment and the wrongful disposition of her personal property. The trial court rendered judgment in favor of the plaintiff both on her claim and on the defendants' counterclaim, and awarded her damages in the amount of $14,000. The defendants appealed to the Appellate Court, which reversed the judgment in

[1] General Statutes § 47a-43 (a) provides in pertinent part: "When any person . . . (3) enters into any land, tenement or dwelling unit and causes damage to the premises or damage to or removal of or detention of the personal property of the possessor . . . the party thus ejected, held out of possession, or suffering damage may exhibit his complaint to any judge of the superior court."

[2] General Statutes § 47a-46 provides: "The party aggrieved may recover in a civil action double damages and his costs against the defendant, if it is found on the trial of a complaint brought under section 47a-43 that he entered into the land, tenement or dwelling unit by force or after entry held the same by force or otherwise injured the party aggrieved in the manner described in section 47a-43."

part, and remanded the case for a retrial on damages only, ruling that the plaintiff was required to establish a statutory violation by clear and convincing evidence in order to recover statutory double damages. We granted certification[3] and now reverse the judgment of the Appellate Court.

The Appellate Court based its decision upon the following facts found by the trial court. "On October 15, 1987, the plaintiff conveyed title to a three-family house located at 123-125 Pearl Street, Waterbury, to the defendant Alamo Management Company (Alamo). The plaintiff had occupied the first floor apartment. Before the closing, she attempted to enter into a use and occupancy agreement with Alamo because she was unable to find another apartment. Although this agreement never materialized, she remained in possession of the first floor apartment after the closing. She moved some of her belongings to a storage area, but left the balance of her appliances and personal property on the premises while she looked for a larger storage unit.

"Alamo entered into an agreement to sell the premises to a third party. The new buyer had a mortgage commitment on November 26, 1987. On Saturday, November 28, 1987, the defendant Dwayne Boise, acting as an agent of the defendant Alamo, forcibly entered the plaintiff's apartment and began to remove her property. When the plaintiff arrrived, Boise refused to allow her to enter the apartment. Her appliances were set aside so that she could pick them up the fol-

---

[3] *Freeman* v. *Alamo Management Co.*, 218 Conn. 910, 591 A.2d 812 (1991). Acting upon petitions for certification filed both by the plaintiff and by the defendants, we granted certification limited to the following issues:

"1. What is the standard of proof for double damages arising out of the violation of the unlawful entry and detainer statute?

"2. Did the trial court apply the appropriate standard of proof?

"3. If the trial court applied the wrong standard of proof, is a retrial limited to damages appropriate?"

lowing Monday, but her other personal property was strewn about the yard or thrown in a dump truck for disposal.

"The trial court also found (1) that because the plaintiff's original possession of the premises was rightful, the only proper mode of eviction available to the defendants was that of summary process, (2) that the plaintiff had not abandoned the premises, (3) that the defendant Boise violated General Statutes § 47a-43 (a) (3) when he forcibly entered the plaintiff's apartment, removed her personal property, and disposed of it, [and] (4) that the plaintiff was entitled to double damages pursuant to General Statutes § 47a-46 in the amount of $14,000 . . . ." *Freeman* v. *Alamo Management Co.,* 24 Conn. App. 124, 126–27, 586 A.2d 619 (1991).[4]

The Appellate Court reversed the trial court's award of double damages. Id., 135. Because violation of the entry and detainer statute "involves willful, wrongful and unlawful acts," and because the penalty of double damages is "a remedy with serious consequences to an individual"; id., 130; the Appellate Court reasoned that it would be inappropriate to determine by the "preponderance of the evidence" standard whether that remedy should be imposed. That standard, which apparently was relied on by the trial court, "indicates that the litigants should share equally the risk of error . . . because the interests at stake have roughly equal societal importance." Id. In contrast, the Appellate Court noted, the "proof beyond a reasonable doubt" standard, which is employed in criminal cases, "implies that the party on whom that burden is imposed should bear almost the entire risk of error." Id. The Appellate Court held that the appropriate standard for determining whether double damages should be imposed was

---

[4] The trial court also addressed other statutory issues not relevant to this appeal. See *Freeman* v. *Alamo Management Co.,* 24 Conn. App. 124, 127, 586 A.2d 619 (1991).

"[p]roof by 'clear and convincing' evidence [which] is an intermediate standard generally used in civil cases involving allegations of fraud or some other quasi-criminal wrongdoing, or when particularly important individual rights are involved." Id., 131. Concluding that "if the evidence [of the underlying statutory violation] satisfies only the fair preponderance standard, damages cannot be doubled"; id.; it remanded the case for a new trial limited to the issue of whether double damages should be imposed.

Both the plaintiff and the defendants requested our review of this judgment. The plaintiff maintains that the trial court imposed the proper standard of proof, while the defendants, on their cross appeal, claim that a new trial should encompass the issue of liability as well as the issue of damages. Because we agree with the plaintiff's contention that the preponderance of the evidence standard governs this case, and therefore conclude that a new trial is not required, we need not consider the defendants' claims about the scope of such a new trial.

As the Appellate Court noted, the issue of what standard of proof is required for double damages pursuant to § 47a-46 appears to be one of first impression, and the statute is silent on the question. *Freeman* v. *Alamo Management Co.,* supra, 24 Conn. App. 129. The preponderance of the evidence standard is appropriate in ordinary tort cases because the litigants should " 'share the risk of error in roughly equal fashion.' " *Santosky* v. *Kramer,* 455 U.S. 745, 755, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). The Appellate Court took the view that, for punitive damages, the more exacting standard of clear and convincing evidence should govern. That standard requires "that degree of belief that lies between the belief that is required to find the truth or existence of the issuable fact in an ordinary civil action and the belief that is required to find guilt in a

criminal prosecution. . . . [T]he burden of persuasion is sustained if the evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist." (Citations omitted; internal quotation marks omitted.) *State* v. *Bonello,* 210 Conn. 51, 66, 554 A.2d 277, cert. denied, 490 U.S. 1082, 109 S. Ct. 3268, 106 L. Ed. 2d 612 (1989).

The argument for a high standard of proof for punitive damages is that "[t]he interests that the parties have at stake in a punitive damages case are not similarly equal. If punitive damages are imposed improperly, or in an excessive amount, the defendant suffers far more than a plaintiff does if the jury incorrectly fails to impose them. The interests at stake are different in two respects. The defendant, unlike the plaintiff, suffers a stigma that may be permanent; and the plaintiff, unlike the defendant, has little or no legitimate personal interest in a correct result. As courts have uniformly held, no plaintiff has a right to punitive damages: the purpose of punitive damages is to vindicate the public interest, not that of a particular plaintiff." M. Wheeler, "The Constitutional Case for Reforming Punitive Damages Procedures," 69 Va. L. Rev. 269, 292 (1983).

A number of jurisdictions require clear and convincing evidence for the award of punitive damages.[5] See J. Ghiardi & J. Kircher, Punitive Damages Law and Practice (1985 & Sup. 1991) § 9.12; annot., Standard of Proof as to Conduct Underlying Punitive Damages Awards—Modern Status, 58 A.L.R.4th 878 (1987 & Sup. 1991). Most of these jurisdictions, however, have

---

[5] Colorado goes even farther, requiring that misconduct meriting punitive damages be proven beyond a reasonable doubt. See Colo. Rev. Stat. § 13-25-127 (2) (1987).

adopted this standard by statute rather than by judicial decision; see J. Ghiardi & J. Kircher, supra; and most of these statutes reflect a legislative response to a well publicized, dramatic increase in the size and frequency of punitive damages awards. See *Browning-Ferris Industries* v. *Kelco Disposal, Inc.,* 492 U.S. 257, 282–83, 109 S. Ct. 2909, 106 L. Ed. 2d 219 (1989) (O'Connor, J., concurring in part and dissenting in part); D. Owen, "Problems in Assessing Punitive Damages Against Manufacturers of Defective Products," 49 U. Chi. L. Rev. 1, 59 (1982).

Whatever the validity of the concerns about boundless punitive damages may be elsewhere, the risk of unfair and excessive punitive damages awards is substantially limited in this state by routine constraints on the amount of punitive damages. "The Connecticut courts have . . . consistently limited punitive or exemplary damage awards in Connecticut to costs in excess of taxable costs." 6 Connecticut Practice, J. Fitzgerald & R. Yules, Connecticut Trial Practice (1987) § 5.19, p. 196; see *Markey* v. *Santangelo,* 195 Conn. 76, 80, 485 A.2d 1305 (1985); *Collens* v. *New Canaan Water Co.,* 155 Conn. 477, 488, 234 A.2d 825 (1967). There are statutory exceptions to this rule, such as § 47a-46, which is at issue in this case.[6] The legislature has not, however, established any statutory linkage between a right to recover punitive damages and a higher standard of proof. See J. Fitzgerald & R. Yules, supra, § 5.20 (listing statutes); see also *Munson* v. *Atwood,* 30 Conn. 102 (1861). Recently, in undertaking product lia-

---

[6] See also General Statutes § 42-110g, which permits a recovery of actual damages, attorneys' fees and punitive damages for violations of the Connecticut Unfair Trade Practices Act. See, e.g., *A. Secondino & Son, Inc.* v. *LoRicco,* 215 Conn. 336, 341–44, 576 A.2d 464 (1990) (no punitive damages absent proof of any damages); *Gargano* v. *Heyman,* 203 Conn. 616, 622, 525 A.2d 1343 (1987) (no abuse of discretion in failure to award punitive damages); see also *Tillquist* v. *Ford Motor Credit Co.,* 714 F. Sup. 607, 617 (D. Conn. 1989) (punitive damages award of $500).

bility reform, the General Assembly expressly rejected a proposal to adopt the clear and convincing evidence standard for awarding punitive damages,[7] and elected instead to cap the amount of punitive damages and to have that amount be determined by the judge.[8] See *Champagne* v. *Raybestos-Manhattan, Inc.*, 212 Conn. 509, 562, 562 A.2d 1100 (1989). These same protections are included in § 47a-46.

Our common law cases have similarly rejected the premise that the risk of stigmatization of the defendant automatically requires a higher standard of proof to be imposed upon the plaintiff. In a case in which a custody order was based upon a finding that a parent had sexually abused his child; *Mallory* v. *Mallory*, 207 Conn. 48, 51–54, 539 A.2d 995 (1988); we acknowledged the "substantial social stigma" that ensues upon such a finding, but concluded nonetheless "that a preponderance of the evidence standard adequately protects a parent from false accusations of sexual abuse, and that the ordinary civil standard of proof better serves the strong societal interest in protecting children from abusive parents." Id., 52. The stigma imposed on the parent in that case is, of course, considerably greater

---

[7] The product liability reform act of 1979 was based on a draft uniform product liability law that had been promulgated by the United States Department of Commerce. See 22 H.R. Proc., Pt. 20, 1979 Sess., p. 7021. That model law included a provision that punitive damages could be awarded only if the defendant's misconduct were proven by clear and convincing evidence. Department of Commerce, Office of the Secretary, Draft Uniform Product Liability Law, 44 Fed. Reg. 2996, 3002, 3018–19 (1979). This provision was included in the Connecticut act as it was originally introduced. See 22 H.R. Proc., Pt. 21, 1979 Sess., pp. 7297–98. Yet it is not part of the punitive damages provision that was finally enacted.

[8] "[General Statutes] Sec. 52-240b. PUNITIVE DAMAGES IN PRODUCT LIABILITY ACTIONS. Punitive damages may be awarded if the claimant proves that the harm suffered was the result of the product seller's reckless disregard for the safety of product users, consumers or others who were injured by the product. If the trier of fact determines that punitive damages should be awarded, the court shall determine the amount of such damages not to exceed an amount equal to twice the damages awarded to the plaintiff."

than that imposed on the defendants here. Moreover, defendants who are found liable suffer stigma with respect to many kinds of torts in which damages are not augmented by statute.

No higher standard of proof is required when a plaintiff seeks to prove criminal activity in a civil action; see *Kilduff* v. *Adams, Inc.,* 219 Conn. 314, 327–29 n.14, 593 A.2d 478 (1991); *Verrastro* v. *Middlesex Ins. Co.,* 207 Conn. 179, 181–83, 540 A.2d 693 (1988); or, as the defendants conceded at oral argument, in a common law claim for punitive damages, in which a plaintiff must allege and prove that a defendant's misconduct was wanton or wilfully malicious. See *Markey* v. *Santangelo,* supra, 77. The contrary rule for libel actions involving a public figure; *Dacey* v. *Connecticut Bar Assn.,* 170 Conn. 520, 535–38, 368 A.2d 125 (1976); rests primarily on the constitutional right to freedom of speech, rather than on the need for an enhanced standard of proof because of a perceived need for greater certainty in adjudication. Id., 536.[9]

We disagree, therefore, with the Appellate Court's conclusion in this case, and in its earlier case of *Schaffer* v. *Lindy,* 8 Conn. App. 96, 104–105, 511 A.2d 1022

[9] *Dacey* v. *Connecticut Bar Assn.,* 170 Conn. 520, 534, 368 A.2d 125 (1976), did cite "certain extraordinary circumstances," that did not involve constitutional rights, in which clear and convincing evidence has been required. "So, in *Busker* v. *United Illuminating Co.,* 156 Conn. 456, 458, 242 A.2d 708 [1968], we noted that fraud must be 'strictly proven by clear, precise and unequivocal evidence'; in *Girden* v. *Alubowicz,* 136 Conn. 511, 513, 72 A.2d 491 [1950], that interference with title to real property by estoppel in derogation of record title must be proved by 'clear and definite evidence'; in *Bell* v. *Bloom,* 146 Conn. 307, 309, 150 A.2d 300 [1959], that a party who asserts the nondelivery of a deed must prove it by 'clear and convincing evidence'; and in *Graybill* v. *Plant,* 138 Conn. 397, 400, 85 A.2d 238 [1951], that a claim for compensation for services from the estate of a decedent over and above that already received may be established only upon 'clear and satisfactory proof.' " Id. In none of the cited instances was the "extraordinary circumstance" a statutory multiplying of damages at the discretion of the trial court.

(1986), that clear and convincing proof is an appropriate standard of proof whenever claims of tortious conduct have serious consequences or harsh or far-reaching effects on individuals or require the proof of willful, wrongful and unlawful acts. Absent evidence of legislative intent to the contrary, we continue to presume that when a statutory private right of action includes multiple damages, the plaintiff's burden of proof is the same as that in other tort cases. See *Munson* v. *Atwood,* supra.

"In instances when punitive damages appear most appropriate, the amount of power held by the defendant (and commensurate vulnerability of the plaintiff) often is great and its abuse, for one reason or other, extreme." D. Owen, "Civil Punishment and the Public Good," 56 S. Cal. L. Rev. 103, 104 (1982). Section 47a-46 was evidently drafted in order to ameliorate the disparity of power between landlords and tenants, and to deter landlords' abuse of their power. The legislature appears to have understood that the damages of the victim would often be intangible and difficult to assess, and that the monetary loss involved might be too small to merit a lawsuit if it were not augmented by statute. Thus, in assessing the plaintiff's loss in this case, the trial court observed that "many of the personal mementos—photos, etc.—could not be replaced and the court could not evaluate them." Yet unless *all* the victims of this type of misconduct are encouraged to act as private attorneys general, wrongful conduct will not be prevented, creating greater insecurity for all tenants. "In the calculation of his expected profits, the wrongdoer is likely to allow for a certain amount of money which will have to be returned to those victims who object too vigorously, and he will be perfectly content to bear the additional cost of litigation as the price for continuing his illicit business. It stands to reason that the chances of deterring him are materially

increased by subjecting him to the payment of punitive damages." *Walker* v. *Sheldon,* 10 N.Y.2d 401, 406, 179 N.E.2d 497, 223 N.Y.S.2d 488 (1961). To increase the plaintiff's burden of proof would weaken this incentive to litigate. "A statute is not to be interpreted to thwart its purpose." *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 489, 400 A.2d 726 (1978).

Section 47a-46 requires the trial court to make an independent determination that, taking into account all of the circumstances of the case, an award of double damages is appropriate. In exercising its discretionary authority, the trial court must examine critically any weakness in the plaintiff's case. " 'In so far as [the statute] requires the person at fault to pay to the injured party a greater sum than that which measures the injury sustained, though not strictly penal, it so far partakes of the nature of a penal statute that it should be construed with reasonable strictness in determining whether the act complained of comes within the description in the statute of the acts for which the person in fault is made liable.' *Dubreuil* v. *Waterman,* 84 Conn. 47, 51, 78 A. 721 [1911]." *Dunbar* v. *Jones,* 87 Conn. 253, 256, 87 A. 787 (1913).

The record in this case reveals no abuse of the trial court's exercise of its discretion. As the trial court found, the plaintiff proved that the defendants had unilaterally seized control of the premises by removing and destroying almost all of the plaintiff's personal property in her apartment without attempting to contact her or giving her any opportunity to remove the property herself. This is precisely the type of misconduct that §§ 47a-43 and 47a-46 were intended to prevent. See *Berlingo* v. *Sterling Ocean House, Inc.,* 203 Conn. 103, 108, 523 A.2d 888 (1987); *Orentlicherman* v. *Matarese,* 99 Conn. 122, 126, 121 A. 275 (1923). The trial court observed that even after Boise had been informed that the plaintiff was on her way to the apart-

ment to collect her belongings, "personal property and pictures were strewn all over the yard." This, the trial court observed, was "a pretty cruel thing to do" and "was close to getting punitive damages."[10] In these circumstances, the trial court's exercise of its discretion comported with the mandate of the statute. See *Gargano* v. *Heyman,* 203 Conn. 616, 622, 525 A.2d 1343 (1987); *Gionfriddo* v. *Avis Rent A Car System, Inc.,* 192 Conn. 280, 296–97, 472 A.2d 306 (1984).

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.

---

[10] The plaintiff's complaint had requested additional punitive damages in accordance with the Connecticut Unfair Trade Practices Act, General Statutes § 42-110g. The trial court, however, did not award punitive damages pursuant to that statute.