# JERROLD M. METCOFF ET AL. *v.* NCT GROUP, INC., ET AL.*

Superior Court, Complex Litigation Docket at Waterbury
File No. X06-CV-04-0184701-S

Memorandum filed February 17, 2011

*Proceedings*

*Michael P. Berman* and *Suzanne LaPlante*, for the plaintiffs.

*Edward T. Krumeich*, for the defendant Michael J. Parrella, Sr.

STEVENS, J.

## STATEMENT OF THE CASE

### I

This case was tried to a jury on the second substitute complaint (#240) filed by the plaintiffs, Jerrold M. Metcoff and David B. Wilson, against the defendant Michael J. Parrella, Sr., and the corporate defendants NCT Group, Inc., Midcore Software, Inc., and Artera Group, Inc. The corporate defendants were defaulted for failure to appear, and the trial proceeded against them as a hearing in damages. The other defendants named in the complaint are Carole Salkind and Morton Salkind. The trial did not proceed against the Salkinds because they filed bankruptcy and the trial proceedings against them were stayed by operation of federal law.[1]

---

[1] The complaint asserts five claims against the Salkinds. Count twenty-one and count twenty-two allege that property of NCT Group was fraudulently transferred respectively to the Salkinds and to Carol Salkind. Count twenty-three asserts breach of contract and misrepresentation claims against Morton Salkind as the alter ego of NCT Group. Count twenty-five alleges that the Salkinds violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. Count twenty-six alleges that Morton Salkind, as the alter ego of NCT Group, violated CUTPA.

The plaintiffs were the principals of a company called Midcore Software Inc. This company developed and marketed certain computer software called Midpoint. On August 29, 2000, the plaintiffs executed a merger agreement for Midcore to be acquired by NCT Group. Parrella was the chief executive officer of NCT Group, and he negotiated the contract on behalf of NCT Group. After the merger, Midcore would become NCT Midcore. Under the terms of the contract, the plaintiffs were entitled to receive NCT Group stock and certain royalties generated from the sale of Midcore products. The gravamen of the plaintiffs' complaint is that they did not receive the stock or royalties promised to them under the agreement and that Parrella made false representations to them as part of the merger transaction.

As addressed further below, the jury's verdict in favor of the plaintiffs included a finding that Parrella made intentional misrepresentations and violated the Connecticut Unfair Trade Practices Act, General Statutes § 42-110g (CUTPA). Based on this finding against Parrella and the default against the corporate defendants, the plaintiffs' claims for attorney fees, costs and punitive damages under CUTPA and for punitive damages under common law are pending before the court.[2] On July 21, 2010, August 3, 2010, and August 6, 2010, supplementary hearings were held before the court on these claims. Subsequently, the plaintiffs and Parrella filed memoranda in accordance with the briefing schedule issued by the court.

II

The complaint presents a complex litany of claims asserted against the defendants in twenty-six counts. The claims against Parrella were asserted in eight

[2] The plaintiffs waived their right to have the amount of common-law punitive damages determined by the jury and presented this issue to the court for adjudication.

counts.[3] In counts ten and eleven, the complaint alleges that Parrella, NCT Group and NCT Midcore made negligent and intentional misrepresentations about the availability of NCT Group stock and about NCT Group's ability to issue the stock to the plaintiffs as required under the agreement. The jury found in favor of the plaintiffs on the negligent misrepresentation claim (count ten) and awarded $559,982 to Metcoff and $496,318 to Wilson. The jury found against the plaintiffs on the intentional misrepresentation claim (count eleven).[4]

---

[3] Only seven of the eight counts asserted against Parrella were considered by the jury. In a ruling issued from the bench on April 1, 2010, the court granted Parrella's motion for a directed verdict as to count sixteen. The plaintiffs received leave to move for the court to reconsider the granting of this motion, and the plaintiffs did not do so. Count sixteen claimed that certain agreements entered into between "NCT Group, NCT Midcore and/ or Parrella" and Artera involved fraudulent transfers to Artera in violation of General Statutes § 52-552e. The court granted Parrella's motion for a directed verdict on the allegations of count sixteen as asserted against him. Based on the evidence, Parrella was neither a transferee nor a transferor, and the claims against him were insufficient as a matter of law to assert a compensable claim under General Statutes § 52-552h. As to all the defendants, the plaintiffs did not provide any evidence about the value of the property at the time of the transfer or seek an avoidance of any such transfer. During the charge conference, the plaintiffs' counsel indicated that the relief sought by the plaintiffs under count sixteen was $257,000, representing the value of the royalties owed to them by NCT Group and NCT Midcore under the merger agreement. Thus, the circumstances of this case do not support such a recovery under the provisions of § 52-552h against either Parrella (who was not a transferee) or against Artera (the purported transferee). As a general rule, a transferee is not liable for the underlying debt owed to the creditor by the transferor. See *Robinson* v. *Coughlin*, 266 Conn. 1, 9, 830 A.2d 1114 (2003) (citation omitted) ("a damages award against a fraudulent transferee generally is appropriate only where the transferee subsequently disposes of the transferred property and retains the proceeds of that disposition" [internal quotation marks omitted]). Consequently, because Artera, the purported transferee, and NCT Group and NCT Midcore, the purported transferors, have been defaulted for failure to appear, the court will enter judgment against these corporate defendants under count sixteen for $1 nominal damages. See *Ratner* v. *Willametz*, 9 Conn. App. 565, 579, 520 A.2d 621 (1987) ("an entry of default against a defendant in a legal action . . . entitles the plaintiff to at least nominal damages").

[4] Count eleven, concerning intentional misrepresentations about the availability of NCT Group stock, was asserted against the defendant Parrella individually and against the defendant NCT Group. As stated above, the jury

In counts twelve and thirteen, the complaint alleges that Parrella, NCT Group and NCT Midcore made negligent and intentional misrepresentations that after the merger, NCT Midcore would operate in the same manner as Midcore Software and would continue the business of Midcore Software. The jury found against the plaintiffs on the negligent misrepresentation claim (count twelve) as asserted against Parrella.[5] The jury found in favor of the plaintiffs on the intentional misrepresentation claim (count thirteen) and awarded $113,855 to Metcoff and $143,434 to Wilson.

Count fifteen is against Artera and Parrella acting in his capacity as the chief executive officer and chairman of Artera. The count alleges that Artera and Parrella tortiously interfered with the plaintiffs' right to receive royalties under the merger agreement. Count seventeen is also against Artera and Parrella acting in his capacity as the chief executive officer and chairman of Artera. This count alleges that these defendants conspired with NCT Group and NCT Midcore to defraud them from receiving the royalties that they were entitled to under the merger agreement. The jury found against the plaintiffs on these claims alleging tortious interference and conspiracy.[6]

found in favor of Parrella and against the plaintiffs on count eleven. As to NCT Group, the jury's verdict did not reflect any award against NCT Group on count eleven. Because of NCT Group's default and the jury's failure to make a compensatory award, the court will award $1 nominal damages in favor of the plaintiff and against NCT Group on count eleven of the complaint.

[5] Although the jury found in favor of Parrella on count twelve, the jury awarded $113,855 to Metcoff and $143,434 to Wilson against NCT Group and NCT Midcore based on these defendants' default.

[6] Count fifteen, alleging tortious interference with the merger agreement between the plaintiffs and NCT Group, was asserted against the defendant Parrella individually, as the president of Artera, and against the defendant Artera. Count seventeen, alleging conspiracy to defraud, was asserted against all the corporate defendants and against Parrella individually as the president of Artera. As stated above, the jury found in favor of Parrella on these counts. As to the corporate defendants, the jury's verdict did not reflect an award against them on these counts. Because of the corporate defendants' default and the jury's failure to make a compensatory award, the court will

Count twenty-four is the last count against Parrella considered by the jury. This count alleges that Parrella, NCT Group, NCT Midcore and Artera violated CUTPA on the basis of the claims of intentional misrepresentations, tortious interference and conspiracy to defraud as asserted in the complaint. The jury found in favor of the plaintiffs and against Parrella on this count, awarding Metcoff $113,855 and awarding Wilson $143,434. The interrogatories contained in the verdict form indicate that the CUTPA finding against Parrella was based solely on the jury's finding that he made intentional misrepresentations concerning the continuation of the plaintiffs' business after the merger.

## III

The complaint asserts twelve counts solely against NCT Group or NCT Midcore, and eight of these counts were presented to the jury.[7] The first count is against NCT Group and alleges that NCT Group breached the merger agreement by failing to deliver NCT Group stock to the plaintiffs. On this count, the jury awarded Metcoff $559,982, plus $315,609 interest; and awarded Wilson $496,318, plus $283,704 interest.

Count two is against NCT Group and NCT Midcore for breach of contract and alleges that they failed to pay royalties to the plaintiffs from sales generated by NCT Midcore as required by the merger agreement. The

---

award $1 nominal damages in favor of the plaintiffs and against the corporate defendants as applicable on counts fifteen and seventeen.

[7] Count four (against NCT Group), count five (against NCT Group) and count seven (against NCT Group and NCT Midcore) alleged breach of contract and were not presented to the jury because at the close of evidence the plaintiffs conceded that the evidence did not prove the amount of the losses claimed in these counts. Consequently, the plaintiffs agreed that the court should award nominal damages on these counts. Counts nineteen and twenty also were not presented to the jury. These counts requested equitable relief from the court. Count nineteen seeks an award against Artera based on unjust enrichment, and count twenty requests an order for a resulting trust against Artera.

jury awarded "0 dollars damages" on this count, and as a result, the court will award $1 nominal damages. See *Ratner* v. *Willametz*, 9 Conn. App. 565, 579, 520 A.2d 621 (1987) ("an entry of default against a defendant in a legal action . . . entitles the plaintiff to at least nominal damages").

Count three is against NCT Group and alleges that as part of their compensation under the terms of the merger agreement, the plaintiffs could elect to receive additional shares of NCT Group stock in lieu of certain royalties guaranteed to them. In count three, the plaintiffs allege that they made this election, but NCT Group breached the merger agreement by failing to deliver the required shares to them. On this count, the jury awarded Metcoff $113,855, plus $64,169 interest; and awarded Wilson $143,434, plus $81,989 interest.

Counts six and nine are against NCT Group and NCT Midcore for breach of contract and allege that the merger agreement made warranties or representations that a sufficient number of shares of NCT Group common stock were available to satisfy the defendants' obligations under the agreement and that no further shareholder action was necessary in order to issue the required stock to the plaintiffs. According to the allegations of count six, NCT Group and NCT Midcore breached the agreement because, when the merger agreement was executed, the "number of shares of NCT Group common stock required to be issued or available [to be issued] exceeded the number of shares authorized." Complaint, Count Six, ¶ 40. According to the allegations of count nine, when the time arrived for the plaintiffs to receive additional shares as required under the merger agreement, they were informed by NCT Group that it "could not issue to either or both of them the requisite number [of shares]" as required by the agreement. Complaint, Count Nine, ¶ 46. Under counts six and nine, the jury awarded Metcoff $559,982, plus

$315,609 interest; and awarded Wilson $496,318, plus $283,704 interest.

Count eight alleges that the merger agreement warranted or represented that after the merger, NCT Midcore "would operate in the same manner as Midcore Software and would continue the business of Midcore Software." Count eight claims that NCT Group and NCT Midcore discontinued the business of Midcore Software in violation of this warranty. On count eight, the jury awarded Metcoff $113,855, plus $64,169 interest; and awarded Wilson $143,434, plus $81,989 interest.

Count fourteen alleges that the merger agreement obligated NCT Group and NCT Midcore to indemnify the plaintiffs for all damages sustained by the plaintiffs as a result of their breach of any representation, warranty or obligation arising under the merger agreement. On count fourteen, the jury awarded Metcoff $673,837, plus $379,778 interest; and awarded Wilson $639,752, plus $365,693 interest.[8]

Count eighteen alleges that NCT Group and NCT Midcore breached the implied covenant of good faith and fair dealing by their conduct that violated the terms of the merger agreement and deprived the plaintiffs of the consideration to which they were entitled under its terms. On count eighteen, the jury awarded Metcoff $113,855, plus $64,169 interest; and awarded Wilson $143,434, plus $81,989 interest.

As mentioned above, Artera is named as a defendant in six counts of the complaint. Artera is named in counts fifteen and seventeen, respectively alleging tortious

[8] Under count fourteen, the plaintiffs also demanded that NCT Group and NCT Midcore indemnify them for litigation costs, including attorney fees incurred as part of this litigation. The plaintiffs waived their right for the jury to determine the amount of these fees and requested that the court make this decision. See Notice of Plaintiffs' Waiver of Jury Trial, filed April 6, 2010 (#546).

interference and civil conspiracy. In count sixteen, the complaint alleges that property was fraudulently transferred from NCT Midcore to Artera. See footnote 3 of this opinion. The remaining claims against Artera, counts nineteen and twenty, were not presented to the jury because they sought equitable relief from the court. Count nineteen seeks an award against Artera based on unjust enrichment, and count twenty requests an order for a resulting trust against Artera. Artera is named as one of the defendants in count twenty-four, which asserts a claim for violation of CUTPA. The CUTPA claim against Artera is predicated on the allegations of counts fifteen, sixteen, seventeen and nineteen.[9]

## DISCUSSION

### I

### Attorney Fees, Costs and Punitive Damages Under CUTPA

### A

The law and criteria governing an award of attorney fees, costs and punitive damages under CUTPA and punitive damages under common law are well established. See *Bridgeport Harbour Place, LLC* v. *Ganim*, Superior Court, judicial district of Waterbury, Complex Litigation Docket, Docket No. X06-CV-04-0184523

---

[9] The plaintiffs did not acquire any substantive relief against Artera under the counts on which the CUTPA claim is based. Nominal damages are awarded against Artera on counts fifteen (alleging tortious interference) and seventeen (alleging conspiracy). See footnote 6 of this opinion. Based on the evidence and the plaintiffs' submissions, the court finds no basis for entering relief on count sixteen (alleging fraudulent transfer) and count nineteen (alleging unjust enrichment). See footnote 3 of this opinion; see also Memorandum of Decision on Claims for Equitable Relief and Indemnification (filed in this case on February 17, 2011). Because the plaintiffs did not acquire any substantive relief on the underlying counts against Artera, and in order to provide consistency in the verdict, the court will enter nominal damages of $1 in favor of the plaintiffs and against Artera on count twenty-four alleging violation of CUTPA.

(October 31, 2008) (*Stevens, J.*) (Memorandum of Decision on the Plaintiff's Claims for Attorney Fees and Punitive Damages).

"General Statutes § 42-110g (d) provides that '[i]n any action brought by a person under this section, the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery.' 'The cases interpreting the attorney's fees provision of CUTPA also indicate that the awarding of attorney's fees is within the discretion of the trial court.' *Staehle* v. *Michael's Garage, Inc.*, 35 Conn. App. 455, 460, 646 A.2d 888 (1994). 'The statute contains no standard by which a court is to award attorney's fees, thus leaving it to the sole discretion of the trial court to determine if attorney's fees should be awarded and the amount of such award.' Id., 461. The court's discretionary decision to award attorney fees should be premised on reasonable determinations and tenable grounds. See *Thames River Recycling, Inc.* v. *Gallo*, 50 Conn. App. 767, 800, 720 A.2d 242 (1998). 'A court has few duties of a more delicate nature than that of fixing counsel fees.' *Laudano* v. *New Haven*, 58 Conn. App. 819, 822, 755 A.2d 907 (2000)." *Bridgeport Harbour Place, LLC* v. *Ganim*, supra, Superior Court, Docket No. X06-CV-04-0184523.

The court concludes that an award of attorney fees and costs is warranted in this case and rejects Parrella's argument that the invoices presented by the plaintiffs' counsel lack sufficient detail to support the recovery of any attorney fees. The deficiencies in the plaintiffs' documentation of their claim for attorney fees are properly considered in evaluating the amount of the award, but they are not so severe to preclude any award whatsoever. "[T]he policy of CUTPA [is] to encourage litigants to act as private attorneys general and to bring actions to foster the statute's proscription against unfair

or deceptive trade practices. [T]he court agrees with the plaintiff[s] that [their] efforts, as represented by [their] litigation expenses, are consistent with the unique policy of CUTPA to enable private attorneys general because [their] efforts succeeded in demonstrating that [they were] harmed by the [defendant's] unfair and deceptive conduct." Id.

A proper and recognized method for determining an award of attorney fees is to consider a "lodestar calculation" (multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate) and to evaluate this calculation by the criteria set forth in *Johnson* v. *Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974); *Steiger* v. *J. S. Builders*, 39 Conn. App. 32, 39, 663 A.2d 432 (1995); see generally *Laudano* v. *New Haven*, supra, 58 Conn. App. 822–23.[10]

The plaintiffs claim that through September, 2010, they incurred fees totaling approximately $1,348,410 and involving approximately 7290 hours of legal services. This work represents a blended rate of approximately $185 an hour.[11] The crux of the parties' dispute does not involve this blended rate or the underlying rates on which it is based. The parties' primary dispute

---

[10] The factors for determining attorney fees articulated in *Johnson* v. *Georgia Highway Express, Inc.*, supra, 488 F.2d 714, are as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. The court notes that based on the parties' submissions, factors seven, ten and eleven have little or no relevance in this particular case.

[11] The base hourly rates charged by the plaintiffs' counsel are not contested by Parrella and range from $150 to $280 an hour. Paralegal services were billed at $90 an hour.

concerns the number of hours related to the CUTPA claim and the number of hours that should be included in the calculation of the attorney fee.

The plaintiffs concede that some of their attorneys' work was for claims unrelated to the CUTPA claim. The jury's verdict in favor of the plaintiffs on their CUTPA claim (count twenty-four) was premised on the claim asserted in count thirteen alleging that the plaintiffs were induced to execute the merger agreement by Parrella's false representation about continuing the plaintiffs' business after the merger. There is no dispute that all of the legal services performed by the plaintiffs' attorneys were not related to this allegation. The plaintiffs argue that they are entitled to an attorney fee of $808,046 after eliminating the time spent on matters unrelated to the CUTPA claim. Thus, the plaintiffs estimate that about 60 percent of their attorneys' work should be awarded as attorney fees. Parrella contends that based on the time spent on unrelated or unsuccessful claims, as well as other problems with the billing records or the services rendered, only about 12 percent of the total work performed by the plaintiffs' counsel should be awarded as attorney fees. The court concludes that the most reasonable estimate is between these positions.

The Appellate Court has indicated that a trial court may award attorney fees under CUTPA for services provided on non-CUTPA claims that "depend on the same facts and circumstances" as the CUTPA claim. (Internal quotation marks omitted.) *Taylor* v. *King*, 121 Conn. App. 105, 132, 994 A.2d 330 (2010); accord *Heller* v. *D. W. Fish Realty Co.*, 93 Conn. App. 727, 735, 890 A.2d 113 (2006). As this court has explained, "[i]n exercising its discretion under CUTPA, a court may include as part of the attorney fee award expenses that are associated with non-CUTPA or unsuccessful claims when all of these claims are related, meaning that they

are premised on essentially the same transactions or when their facts are inextricably connected or intertwined." *Bridgeport Harbour Place, LLC* v. *Ganim,* supra, Superior Court, Docket No. X06-CV-04-0184523.

The CUTPA count was expressly based on Parrella's alleged conduct involving intentional misrepresentations, tortious interference and conspiracy to defraud as asserted in the complaint. These allegations were asserted in counts eleven, thirteen, fifteen and seventeen of the complaint, and therefore, the services rendered in the prosecution of these counts are related to the plaintiffs' CUTPA claim. Counts ten and twelve alleging negligent misrepresentation by Parrella and count eight alleging breach of contract by NCT Group involved facts that were inextricably connected or intertwined with these CUTPA claims. Comparatively, the other counts against the corporate defendants are not as related to the CUTPA claims and should be excluded or discounted from the attorney fee calculation. Moreover, the plaintiffs do not seriously dispute that the claims against the Salkinds are not related or connected to their prevailing CUTPA claim against Parrella.

Parrella also contends that the time included as part of the plaintiffs' attorney fee claim does not appear to fully or appropriately exclude services incurred for various, unrelated matters such as certain work related to: the claims against the Salkinds; the bankruptcy proceedings of the corporate defendants; negotiations regarding the plaintiffs' noncompete agreements; a companion case, *Metcoff* v. *Lebovics,* 123 Conn. App. 512, 2 A.3d 942 (2010); or the claim for common-law punitive damages. Parrella also argues that the fees requested by the plaintiffs should reflect a reduction for redundant or overlapping work performed by the plaintiffs' counsel. The court agrees that an appropriate reduction should be made for these reasons, but not in the size or amount advanced by the defendant.

The court also agrees with Parrella's position that another mitigating factor in evaluating the plaintiffs' request for attorney fees is the plaintiffs' failure to prevail on all their claims. "A key consideration in evaluating [a claim for litigation expenses] is the overall extent of the success achieved. Where a party succeeds on his [statutory] claim, but fails on other claims brought in the same suit, the size of his [attorney fee] award should reflect his success, as determined by the trial court, in securing redress for the injuries that prompted his [statutory] claim and reasonable legal cost incurred in pursuing this success. Consequently, even when the plaintiff's claims are interrelated, the lodestar amount may be excessive when the plaintiff has achieved only partial or limited success. . . . Again, the most critical factor is the degree of success obtained." (Citations omitted; internal quotation marks omitted.) *Bridgeport Harbour Place, LLC* v. *Ganim,* supra, Superior Court, Docket No. X06-CV-04-0184523.

The plaintiffs emphasize that they sought $257,289 for Parrella's wrongful conduct involving the continuation of the plaintiffs' business, and this is the amount awarded by the jury for the CUTPA violation. On the other hand, Parrella correctly notes that the CUTPA claim was not limited to this allegation. The plaintiffs also based their CUTPA claim on allegations that Parrella made intentional misrepresentations concerning the availability of the requisite amount of NCT Group stock, engaged in tortious interference with the plaintiffs' contractual relations and participated in a conspiracy to defraud the plaintiffs. These charges were made in counts eleven, fifteen and seventeen and were incorporated into the CUTPA claim. The jury found in favor of Parrella on all these allegations, and consequently, the time spent on the prosecution of these claims did not achieve a prevailing result. Cf. *Lyons* v. *Nichols,* Superior Court, judicial district of Fairfield, Docket No.

CV-94-0312019 (May 13, 1999) (*Stevens, J.*) ("it would not be an appropriate exercise of the court's discretion to award the plaintiff all the attorney fees expended in his litigation against [the defendant] when the majority of these expenses were incurred on meritless claims"), aff'd, 63 Conn. App. 761, 778 A.2d 246, cert. denied, 258 Conn. 906, 782 A.2d 1244 (2001). The court also notes that Parrella's motion for a directed verdict was granted on count sixteen of the complaint alleging fraudulent transfer.

Additionally, Parrella correctly notes that the billing records submitted by the plaintiffs' counsel are not sufficiently recorded in order to make the precise differentiations between the services recoverable under CUTPA and those that are not in the ways articulated above. Moreover, even if the billing records were recorded with better specificity, the task of identifying this related and unrelated time with precise accuracy from over 7000 hours of time that were billed over the course of six years would be difficult. Nevertheless, exactitude is not a requisite for an award of damages when the record is sufficient to allow a reasonable estimate of the recovery, and the court is satisfied that a fair estimation of the attorney fee award may be accomplished by an appropriate reduction of the total services documented. The law is established that when dealing with hours that are excessive, unreasonable or otherwise unrecoverable "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." (Internal quotation marks omitted.) *Kirsch* v. *Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998).

For the reasons discussed above, the court's consideration of the *Johnson* criteria, the parties' submissions and the court's review and familiarity with the record, the court finds that a fair and reasonable attorney fee

award against Parrella is $540,000, $270,000 in favor of Metcoff and $270,000 in favor of Wilson. This amount represents approximately 40 percent of the total fees claimed to have been incurred by the plaintiffs' counsel in this case.

The plaintiffs also assert a claim for attorney fees against NCT Group and NCT Midcore under the count of the complaint alleging a CUTPA violation. The evaluation of this claim is somewhat more challenging because the default of these corporate defendants precludes an adversarial presentation of the parties' positions. Nevertheless, two issues appear clear. First, the claims against the Salkinds do not appear related to or interconnected with the CUTPA claims against these corporate defendants. Second, because the trial against NCT Group and NCT Midcore was a hearing in damages, much of the very extensive evidence presented on Parrella's liability and special defenses was unrelated to the evidence regarding this damages hearing. In evaluating the record based on these considerations and the *Johnson* criteria, the court concludes that a fair and reasonable attorney fee against the NCT Group and NCT Midcore is also $540,000, $270,000 in favor of Metcoff and $270,000 in favor of Wilson.

## B

The plaintiffs also seek an award against the defendants for $42,722 in "non-taxable" costs, meaning expenses that are not recoverable by statute as taxable costs. Parrella relies on *Taylor* v. *King*, supra, 121 Conn. App. 105, to argue that such "non-taxable" costs are unavailable under CUTPA. In *Taylor*, the Appellate Court held that expert witness fees are not recoverable under the provisions of CUTPA and are recoverable only as taxable costs authorized under the provisions of General Statutes § 52-260. Accord *Centimark Corp.* v. *Village Manor Associates Ltd. Partnership*, 113 Conn.

App. 509, 967 A.2d 550, cert. denied, 292 Conn. 907, 973 A.2d 103 (2009); *Miller* v. *Guimaraes*, 78 Conn. App. 760, 829 A.2d 422 (2003).

Numerous trial courts have questioned the reasoning of this opinion expressed in *Taylor*. As explained by Judge Gordon, recovery of nontaxable costs under CUTPA appears to be consistent and logical with the "intent of CUTPA, which [is] to empower consumers and to encourage them to bring actions to enforce the law. In an era of complex litigation, the teeth would be taken out of the act if the cost associated with diverse and necessary expert witnesses is not recoverable." *Duerr* v. *Dicesare*, Superior Court, judicial district of New London, Docket No. 566915 (October 1, 2004) (*Gordon, J.*) (37 Conn. L. Rptr. 909); see also *Gerner* v. *Applied Industrial Materials Corp.*, Superior Court, judicial district of Stamford-Norwalk, Complex Litigation Docket, Docket No. X08-CV-02-0192069 S (June 30, 2005) (*Adams, J.*) ("To limit the definition of 'costs' in § 42-110g (d) to taxable costs would make it redundant of those statutes, including § 52-260, allowing taxable costs to a prevailing party. It would also be inconsistent with the legislative purpose of CUTPA to encourage private litigants to act on their own initiative to enforce provisions of the statute.").

The provisions of CUTPA are to be broadly construed consistent with the statute's remedial purposes. General Statutes 42-110b (d). Under common law, "nontaxable" costs are recoverable as part of a punitive damages award for fraudulent conduct, and an intent to deceive, a necessary element of such a claim, is not an element of a CUTPA claim. See *Prishwalko* v. *Bob Thomas Ford, Inc.*, 33 Conn. App. 575, 583, 636 A.2d 1383 (1987) ("[i]t is not a prerequisite of a CUTPA violation to prove that a car dealer intended to deceive when an odometer reading is not accurate"); see also *Web Press Services Corp.* v. *New London Motors, Inc.*, 203

Conn. 342, 361, 525 A.2d 57 (1987) ("[i]t is now well established that CUTPA proscribes a broader range of conduct than did the common law action for innocent misrepresentation"). Morever, if costs under CUTPA are limited to the costs available under other statutes, then the express language of § 42-110g (d) that provides for the recovery of costs is essentially superfluous. Nevertheless, the court cannot find a reasoned basis to distinguish *Taylor* from this case, and the court is inexorably bound to follow the appellate authority of this state. See *Potvin* v. *Lincoln Service & Equipment Co.*, 298 Conn. 620, 650, 6 A.3d 60 (2010) ("[a] trial court is required to follow the prior decisions of an appellate court to the extent that they are applicable to facts and issues in the case before it, and the trial court may not overturn or disregard binding precedent").[12]

## C

"General Statutes § 42-110g (a) provides in relevant part that '[t]he court may, in its discretion, award punitive damages. . . .' As a general rule, the aims of punitive damages are punishment, deterrence and profit disgorgement. Under CUTPA, the award and the amount of punitive damages are discretionary with the court. *Gargano* v. *Heyman*, 203 Conn. 616, 622, 525 A.2d 1343 (1987). Although the law is not well developed as to how the court's discretion should be guided in determining punitive damages under CUTPA, a basic criterion for such an award is evidence revealing 'a

---

[12] As noted by the plaintiffs, in *Bridgeport Harbour Place, LLC* v. *Ganim*, supra, Superior Court, Docket No. X06-CV-04-0184523, this court relied on *Bristol Technology, Inc.* v. *Microsoft Corp.*, 127 F. Sup. 2d 64, 82–84 (D. Conn. 2000), to state that "[t]he costs recoverable under CUTPA are not controlled or limited by statutory, taxable costs." The defendants in *Bridgeport Harbour Place, LLC*, however, did not contest the plaintiff's claim for nontaxable costs. See *Bridgeport Harbour Place, LLC* v. *Ganim*, supra, Superior Court, Docket No. X06-CV-04-0184523, n.7. Consequently, this statement in *Bridgeport Harbour Place, LLC*, is *obiter dicta*.

reckless indifference to the rights of others or an intentional and wanton violation of those rights.' Id." *Bridgeport Harbour Place, LLC* v. *Ganim*, supra, Superior Court, Docket No. X06-CV-04-0184523.

"CUTPA does not expressly delineate the criteria to be utilized in measuring the amount of a punitive damages award, and the issue has not definitively been addressed by our appellate courts. See *Perkins* v. *Colonial Cemeteries, Inc.*, 53 Conn. App. 646, 649, 734 A.2d 1010 (1999) ('the CUTPA statutes do not provide a method for determining punitive damages'). Certainly, the nature of the defendants' conduct, the actual harm to the plaintiff, and the harm the defendants intended to inflict are all relevant considerations.[13] As compared to punitive damages under Connecticut common law, punitive damages under CUTPA are focused on deterrence, rather than mere compensation. *Lenz* v. *CNA Assurance Co.*, 42 Conn. Sup. 514, 630 A.2d 1082 (1993) [(9 Conn. L. Rptr. 87)]. Consequently, the defendants' financial condition is a relevant consideration. 'Once deterrence rather than compensation becomes the focus of CUTPA punitive damages . . . then the financial standing of the party against whom damages are sought becomes relevant and material.' Id., 516." *Bridgeport Harbour Place, LLC* v. *Ganim*, supra, Superior Court, Docket No. X06-CV-04-0184523. The defendant's financial condition also may be a relevant consideration because punitive damages should not constitute such a large percentage of a defendant's net worth so "as to result in the financial ruin of the defendant." *Vasbinder* v. *Scott*, 976 F.2d 118, 121 (2d Cir. 1992).

---

[13] The Restatement (Second) of Torts, § 908 (2) (1979), states that "[i]n assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant." See generally R. Langer, J. Morgan & D. Belt, 12 Connecticut Practice Series: Unfair Trade Practices (2003) § 6.11.

"Moreover, the Appellate Court has observed that awarding an amount equal to the plaintiff's actual damages 'is a recognized method for determining punitive damages under CUTPA. . . . It is not an abuse of discretion to award punitive damages based on a multiple of actual damages.' (Citations omitted.) *Staehl* v. *Michael's Garage, Inc.,* [supra, 35 Conn. App. 463]. '[C]ourts generally award punitive damages in amounts equal to actual damages or multiples of the actual damages.' *Perkins* v. *Colonial Cemeteries, Inc.,* supra, 53 Conn. App. 649. Indeed, it appears that in terms of consistency or frequency, punitive damages awards under CUTPA are generally equal to or twice the amount of the compensatory award. See generally [R. Langer, J. Morgan & D. Belt, 12 Connecticut Practice Series: Unfair Trade Practices (2003)] § 6.11, pp. 490–91 nn.92 and 93." *Bridgeport Harbour Place, LLC* v. *Ganim,* supra, Superior Court, Docket No. X06-CV-04-0184523. Additionally, "[b]ecause neither compensation nor enrichment is a valid purpose of punitive damages, an award should not be so large as to constitute a windfall to the individual litigant." (Internal quotation marks omitted.) Id.

Parrella insists that his conduct does not warrant the imposition of punitive damages. He contends that during his premerger negotiations with the plaintiffs he advised them that the Midpoint technology would be used by NCT Group in derivative products that might be sold through affiliated companies such as Artera. Also, according to Parrella, any representations to the plaintiffs about the continuation of the Midcore business were related solely to the requirement that the transaction would be structured as a tax free reorganization, and not to any guarantee that the Midpoint software would never be used in derivative products or by affiliated companies. The thrust of Parrella's position

is that his actions were reasonable and cannot be associated with the type of reckless or wanton behavior on which an award of punitive damages is based.

Parrella's characterization of his conduct does not square with the findings of the jury. The jury did not find that Parrella made negligent misrepresentations about continuing the plaintiffs' business (count twelve), but found that these misrepresentations were *intentional* (count thirteen). The jury was charged that in order to render a verdict against Parrella for intentional misrepresentation, it was required to find that he knowingly made a false statement to induce the plaintiffs to rely on it. Furthermore, the jury concluded that Parrella's conduct warranted the imposition of common-law punitive damages. This conclusion required the jury to find that the defendant's conduct was outrageous because it expressed a reckless indifference to the rights of others or an intentional violation of those rights. The evidence supporting these findings was conflicting and disputed, but they were within the jury's province to make. In exercising its discretion to determine whether the circumstances of this case warrant the imposition of punitive damages under CUTPA, the court concludes that such damages are justified based on the evidence that the defendant made intentionally false representations on which the plaintiffs reasonably relied to their detriment.

As to the amount of the punitive damages, the plaintiffs argue that a punitive damages award should be two or three times the amount of the $257,289 compensatory award so that the sum of the awards for punitive damages and litigation expenses equals $1.4 million, which is an amount approximately representing all the expenses incurred by the plaintiffs in prosecuting this entire litigation. Thus, the plaintiffs seek litigation expenses and punitive damages that total $1.4 million in addition to the jury's compensatory award of $257,289.

According to the plaintiffs, such a recovery would make them "whole" and would not represent a "windfall" to them. The plaintiffs also note that the evidence indicates that Parrella's net worth is between $475,000 and $1.5 million. In his objection, Parrella argues that the plaintiffs support this punitive damages claim by a gross overstatement of their case and by amounts that would "wipe out" his net worth. The court agrees with the defendant.

The thrust of the plaintiffs' reasoning supporting this punitive damages claim is that they not only prevailed on most of their claims against Parrella, but also that Parrella's single CUTPA violation is attributable to *all* the wrongful conduct of this litigation, causing them to incur approximately $1.4 million in litigation expenses. The breadth of this proposition is too wide to be considered a reasonable basis for determining the amount of punitive damages in this case. The court reiterates that a prevailing plaintiff has no unqualified right to punitive damages under CUTPA; such damages are reserved to the reasonable exercise of the court's discretion, and they should not be so large as to represent a windfall to the plaintiff. After careful consideration of the evidence, the parties' positions, and the policies and purposes of CUTPA, the court awards punitive damages against Parrella in the amount of $257,289, $128,644.50 in favor of Metcoff and $128,644.50 in favor of Wilson. This total amount of $257,289 equals the compensatory damages awarded by the jury.

The analysis of the plaintiffs' punitive damages claim against the defendants NCT Group and NCT Midcore differs from that for Parrella primarily because of the default against them. Nevertheless, in considering the evidence and the purposes of a punitive award under CUTPA, the court fails to discern a reasoned or persuasive basis why the amount of the punitive award against them should be substantially different. Consequently,

the court awards a punitive damages award against NCT Group and NCT Midcore and in favor of Metcoff for $128,644.50 and in favor of Wilson for $128,644.50.

## II

### PUNITIVE DAMAGES
### UNDER THE COMMON LAW

The plaintiffs seek common-law punitive damages under count thirteen alleging intentional misrepresentation. Common-law punitive damages are recoverable "when the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of those rights." *Vandersluis* v. *Weil*, 176 Conn. 353, 358, 407 A.2d 982 (1978). Punitive damages may be awarded upon a showing of fraud. *Plikus* v. *Plikus*, 26 Conn. App. 174, 180, 599 A.2d 392 (1991).

"Under Connecticut law, punitive damages primarily serve compensatory purposes and are limited to the plaintiff's litigation expenses less taxable costs. *Berry* v. *Loiseau*, 223 Conn. 786, 825–27 [614 A.2d 414] (1992); *Alaimo* v. *Royer*, 188 Conn. 36, 42–43 [448 A.2d 207] (1982). The award of punitive damages based on litigation costs has been recognized by our Supreme Court as also being a sufficient means to punish and deter wrongful conduct. *Berry* v. *Loiseau*, supra, [827]. An award of punitive damages rests in the sound discretion of the trier of the facts. *Kenny* v. *Civil Service Commission*, 197 Conn. 270, 277 [496 A.2d 956] (1985); see generally *Freeman* v. *Alamo Management Co.*, 221 Conn. 674, 679 [607 A.2d 370] (1992) ('[a]s courts have uniformly held, no plaintiff has a right to punitive damages: the purpose of punitive damages is to vindicate the public interest not that of a particular plaintiff')." *Lyons* v. *Nichols*, supra, Superior Court, Docket No. CV-94-0312019.

In its verdict against Parrella under count thirteen, the jury found that his conduct was outrageous and

warranted the imposition of punitive damages. The parties agreed that on the basis of such a finding, the amount of common-law punitive damages would be decided by the court.

The plaintiffs seek common-law punitive damages in the amount of $850,769, representing $808,047 for attorney fees and $42,722 in nontaxable costs. As previously discussed, these fees and expenses represent the plaintiffs' calculation of the amount of litigation expenses (excluding taxable costs) incurred by them in prosecuting the CUTPA claim against Parrella. The thrust of the plaintiffs' argument is that the common-law punitive damages award should be in an amount that is equal to the reasonable litigation expenses incurred in prosecuting the misrepresentation and related claims. In opposition, Parrella insists that it would be duplicative and excessive for the plaintiffs to receive common-law punitive damages *in addition* to litigation costs under CUTPA when the punitive damages are measured by litigation costs. In response, the plaintiffs argue that Parrella "confuses awarding the same damages on two different counts with 'double recovery,'" and contend that they are entitled "to pursue the same damages awarded under count thirteen and twenty-four through either the CUTPA claim (count 24) or common law intentional misrepresentation claim (count 13)." Reply In Support of Plaintiffs' Brief, dated November 8, 2010, pp. 7–8.

The court agrees with the plaintiffs that they may seek the same damages under different counts, but the question for the court is whether such a recovery under multiple counts is reasonable under the circumstances. As previously stated, punitive damages under Connecticut common law primarily serve compensatory purposes and are imposed to vindicate the public interest, not the interests of a particular plaintiff. See *Freeman* v. *Alamo Management Co.*, supra, 221 Conn. 679. As

with punitive damages under CUTPA, a plaintiff does not have an unqualified right to common-law punitive damages, and the recovery of such damages is vested in the reasonable exercise of the court's discretion. In exercising this discretion, the court may appropriately consider the other awards received by the plaintiffs to evaluate whether an additional award of punitive damages is consistent with the compensatory purposes of punitive damages.

Based on the court's award of attorney fees and punitive damages under CUTPA, the court declines to award common-law punitive damages except as follows. The plaintiffs incurred $42,722 in "non-taxable" expenses not recoverable under CUTPA. See *Taylor* v. *King*, supra, 121 Conn. App. 105. Although such "non-taxable" expenses are not recoverable under CUTPA, they are recoverable as part of an award for common-law punitive damages. These expenses should be awarded to the plaintiffs with a reasonable and appropriate reduction in order for the recovery to reflect an amount fairly attributable to the prosecution of the CUTPA claim. For the reasons similar to those justifying a 60 percent reduction of the plaintiffs' attorney fees, the court awards punitive damages based on the plaintiffs' "non-taxable" costs in an amount totaling $17,089. Consequently, the court awards punitive damages against Parrella, NCT Group and NCT Midcore and in favor of Metcoff in the amount of $8544.50 and in favor of Wilson in the amount of $8544.50.

## CONCLUSION

In summary, the plaintiffs are awarded the following against the defendants Parrella, NCT Group and NCT Midcore: under CUTPA, attorney fees in the amount of $540,000 and punitive damages in the amount of

$257,289; and for common-law punitive damages, damages in the amount of $17,089.[14]

[14] Because an award of nominal damages enters against Artera under the CUTPA count, the court declines to award attorney fees or punitive damages against this defendant. See footnote 9 of this opinion.

